APPEAL,CLOSED,JURY,PROSE−NP,TYPE−H

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: <u>1:22−cv−02717−BAH</u>
### *Internal Use Only*

| | |
|---|---|
| ABBOTT v. ROUNDS | Date Filed: 08/22/2022 |
| Assigned to: Judge Beryl A. Howell | Date Terminated: 07/22/2025 |
| Demand: $300,000 | Jury Demand: Plaintiff |
| Cause: 42:2000e Job Discrimination (Employment) | Nature of Suit: 442 Civil Rights: Jobs |
| | Jurisdiction: U.S. Government Defendant |

**Plaintiff**

**ELAINE ABBOTT**  represented by **ELAINE ABBOTT**
Email: discriminationlawsuitvoge@protonmail.com
PRO SE

**Yveline Litha Dalmacy**
DALMACY LAW, PLLC
1717 N Street NW
Suite 1
Washington, DC 20036
516−591−4411
Email: dalmacylaw@gmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**EMORY A. ROUNDS**  represented by **L'Shauntee J. Robertson**
*Director United States Office of* DOJ−USAO
*Governments Ethics in his official* 601 D Street NW
*capacity* Suite 7.731
*TERMINATED: 09/08/2023* Washington, DC 20530
(202) 252−1729
Fax: (202) 252−2599
Email: lshauntee.robertson@usdoj.gov
*TERMINATED: 06/07/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**SHELLEY FINLAYSON**  represented by **Dimitar Georgiev−Remmel**
*Acting Director United States Office of* DOJ−USAO
*Government Ethics, in her official* Civil Division
*capacity.* 601 D Street NW
Washington, DC 20530
202−252−7678

Email: dimitar.georgiev−remmel@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**L'Shauntee J. Robertson**
(See above for address)
*TERMINATED: 06/07/2025*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/22/2022 | 1 | COMPLAINT against EMORY A. ROUNDS ( Filing fee $ 402, receipt number 202992) with Jury Demand filed by ELAINE ABBOTT. (Attachment: # 1 Civil Cover Sheet)(zed) (Entered: 09/12/2022) |
| 08/22/2022 | 2 | MOTION for CM/ECF Password by ELAINE ABBOTT. (zed) (Entered: 09/12/2022) |
| 09/12/2022 | | SUMMONS Not Issued as to EMORY A. ROUNDS (zed) (Entered: 09/12/2022) |
| 09/13/2022 | 3 | STANDING ORDER. Signed by Chief Judge Beryl A. Howell on September 13, 2022. (lcbah3) (Entered: 09/13/2022) |
| 09/13/2022 | | MINUTE ORDER (paperless) GRANTING, upon consideration of plaintiff's representations and compliance with D.D.C. LCvR 5.4(b)(2), plaintiff's 2 Motion for CM/ECF User Name and Password. Signed by Chief Judge Beryl A. Howell on September 13, 2022. (lcbah3) (Entered: 09/13/2022) |
| 09/14/2022 | | MINUTE ORDER (paperless) DIRECTING, by October 12, 2022, plaintiff to perfect the filing of the 1 Complaint either (1) by refiling the Complaint to include her full residential address and phone number, or (2) by filing under seal a notice containing her full address and phone number. *See* LCvR 5.1(c)(1) ("The first filing by or on behalf of a party shall have in the caption the name and full residence address of the party. If the party does not wish to appear on the public docket, it shall omit the address and simultaneously file under seal a notice containing its full address, which notice shall be available only to the Court and the opposing party. If the party is appearing *pro se*, the caption shall also include the party's telephone number, unless the *pro se* party wishes to include that in its sealed filing."); and CAUTIONING plaintiff that "[f]ailure to provide the address information within 30 days of filing may result in the dismissal of the case against the defendant." *Id.* Signed by Chief Judge Beryl A. Howell on September 14, 2022. (lcbah3) (Entered: 09/14/2022) |
| 09/19/2022 | 4 | SEALED DOCUMENT filed by ELAINE ABBOTT. re Order. (This document is SEALED and only available to authorized persons.)(zed) (Entered: 09/20/2022) |
| 09/28/2022 | | MINUTE ORDER (paperless) DIRECTING plaintiff to file a summons, for which a form can be found on the Court's website, as to EMORY A. ROUNDS pursuant to Fed. R. Civ. P. 4(b) ("On or after filing the complaint, the plaintiff may present a summons to the clerk for signature and seal.... A summons−−or a copy of a summons that is addressed to multiple defendants−−must be issued for each defendant to be served."). Signed by Chief Judge Beryl A. Howell on September 28, 2022. (lcbah3) (Entered: 09/28/2022) |
| 11/14/2022 | 5 | |

|  |  | SUMMONS (3) Issued Electronically as to EMORY A. ROUNDS, U.S. Attorney and U.S. Attorney General (Attachment: # 1 Notice and Consent)(zsl) (Entered: 11/14/2022) |
|---|---|---|
| 12/14/2022 | 6 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. EMORY A. ROUNDS served on 11/21/2022 (Abbott, Elaine) (Entered: 12/14/2022) |
| 12/14/2022 | 7 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 11/21/2022. (Abbott, Elaine) (Entered: 12/14/2022) |
| 12/14/2022 | 8 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 11/21/2022. Answer due for ALL FEDERAL DEFENDANTS by 1/20/2023. (Abbott, Elaine) (Entered: 12/14/2022) |
| 01/12/2023 | 9 | NOTICE of Appearance by L'Shauntee J. Robertson on behalf of All Defendants (Robertson, L'Shauntee) (Entered: 01/12/2023) |
| 01/20/2023 | 10 | MOTION for Extension of Time to File Response/Reply by EMORY A. ROUNDS. (Robertson, L'Shauntee) (Entered: 01/20/2023) |
| 01/23/2023 |  | MINUTE ORDER (paperless) GRANTING defendant's 10 Consent Motion for Extension of Time to File Responsive Pleading, and DIRECTING defendant to answer or otherwise respond to plaintiff's 1 Complaint by March 20, 2023. Signed by Chief Judge Beryl A. Howell on January 23, 2023. (lcbah3) (Entered: 01/23/2023) |
| 01/24/2023 |  | Set/Reset Deadlines: Answer to the Complaint due by 3/20/2023. (ztg) (Entered: 01/24/2023) |
| 03/20/2023 | 11 | Second MOTION for Extension of Time to File Response/Reply by EMORY A. ROUNDS. (Robertson, L'Shauntee) (Entered: 03/20/2023) |
| 03/21/2023 |  | MINUTE ORDER (paperless) GRANTING defendant's 11 Second Motion for Extension of Time to File Responsive Pleading and DIRECTING defendant to answer or otherwise respond to plaintiff's 1 Complaint by March 23, 2023. Signed by Judge Beryl A. Howell on March 21, 2023. (lcbah3) (Entered: 03/21/2023) |
| 03/22/2023 |  | Set/Reset Deadlines: Answer to the Complaint due by 3/23/2023. (ztg) (Entered: 03/22/2023) |
| 03/23/2023 | 12 | ANSWER to 1 Complaint by EMORY A. ROUNDS.(Robertson, L'Shauntee) (Entered: 03/23/2023) |
| 04/24/2023 | 13 | MEET AND CONFER STATEMENT. (Robertson, L'Shauntee) (Entered: 04/24/2023) |
| 04/24/2023 |  | MINUTE ORDER (paperless), upon consideration of the schedule proposed in the parties' 13 Joint Meet and Confer Statement, ISSUING the following SCHEDULING ORDER:<br>1. By Wednesday, May 24, 2023, the parties shall provide their initial disclosures;<br>2. By Friday, September 8, 2023, any other parties shall be joined and any required motion to amend any pleading made;<br>3. By Monday, October 23, 2023, discovery shall close, which discovery shall have the following limits: 25 interrogatories per party and 10 depositions per side, and the parties shall submit a joint status report advising the Court whether (a) they request a stay of proceedings and referral to mediation for some period; or (b) they anticipate the |

| | | |
|---|---|---|
| | | filing of dispositive motions; and<br>4. By Friday, December 22, 2023, any dispositive motions shall be filed, with any oppositions due by Tuesday, February 20, 2024, and replies due by Thursday, March 21, 2024. Signed by Judge Beryl A. Howell on April 24, 2023. (lcbah3) (Entered: 04/24/2023) |
| 04/25/2023 | | Set/Reset Deadlines: Initial disclosures due by 5/24/2023; Amended Pleadings/joinder of parties due by 9/8/2023; Discovery due by 10/23/2023 (see Order for details);. dispositive motions due by 12/22/2023, oppositions due by 2/20/2024, replies due by 3/21/2024. (ztg) (Entered: 04/25/2023) |
| 05/24/2023 | 14 | RULE 26a1 STATEMENT. (Robertson, L'Shauntee) (Entered: 05/24/2023) |
| 05/24/2023 | 15 | RULE 26a1 STATEMENT. (ABBOTT, ELAINE) (Entered: 05/24/2023) |
| 09/08/2023 | 16 | AMENDED COMPLAINT against ELAINE ABBOTT with Jury Demand filed by ELAINE ABBOTT. (Attachments: # 1 Exhibit Red−Line Draft)(ABBOTT, ELAINE) (Entered: 09/08/2023) |
| 09/21/2023 | | MINUTE ORDER (paperless) DIRECTING defendant, upon consideration of plaintiff's 16 Amended Complaint and the Court's April 24, 2023 Scheduling Order, allowing parties to file any motion to amend any pleading by September 8, 2023, to provide notice to the Court, by September 27, 2023, as to whether it consents to plaintiff filing an amended complaint. *See* Fed. R. Civ. P. 15(a)(2) (allowing party to amend with opposing party's written consent or the court's leave). Signed by Judge Beryl A. Howell on September 21, 2023. (lcbah1) (Entered: 09/21/2023) |
| 09/22/2023 | | Set/Reset Deadlines: Parties Notice To The Court due by 9/27/2023. (mac) (Entered: 09/22/2023) |
| 09/27/2023 | 17 | NOTICE *IN RESPONSE TO COURT ORDER* by SHELLEY FINLAYSON (Robertson, L'Shauntee) (Entered: 09/27/2023) |
| 09/29/2023 | | MINUTE ORDER (paperless) MODIFYING, upon consideration of plaintiff's 16 Amended Complaint and defendant's 17 Notice in Response to Court Order, the SCHEDULING ORDER issued on April 24, 2023, as follows:<br>1. By Monday, October 9, 2023, the defendant shall file its answer to plaintiff's amended complaint;<br>2. By Friday, November 24, 2023, discovery shall close, which discovery shall have the following limits: 25 interrogatories per party and 10 depositions per side, and the parties shall submit a joint status report advising the Court whether (a) they request a stay of proceedings and referral to mediation for some period; or (b) they anticipate the filing of dispositive motions; and<br>3. By Monday, January 22, 2024, any dispositive motions shall be filed, with any oppositions due by Monday, February 26, 2024, and replies due by Monday, March 25, 2024.<br>Signed by Judge Beryl A. Howell on September 29, 2023. (lcbah1) (Entered: 09/29/2023) |
| 09/29/2023 | | Set/Reset Deadlines: Defendant Answer To Plaintiff's Amended Complaint due by 10/9/2023, Discovery To Close by 11/24/2023. Dispositive Motions due by 1/22/2024. Oppositions due by 2/26/2024. Replies due by 3/25/2024. (mac) (Entered: 09/29/2023) |
| 10/10/2023 | 18 | ANSWER to 16 Amended Complaint by SHELLEY FINLAYSON.(Robertson, L'Shauntee) (Entered: 10/10/2023) |

| 11/24/2023 | 19 | Joint STATUS REPORT *and Motion to Extend* by SHELLEY FINLAYSON. (Robertson, L'Shauntee) (Entered: 11/24/2023) |
|---|---|---|
| 11/24/2023 | 20 | Joint MOTION for Extension of Time to Complete Discovery *; and Joint Status Report* by SHELLEY FINLAYSON. (Robertson, L'Shauntee) (Entered: 11/24/2023) |
| 11/27/2023 | | MINUTE ORDER (paperless) GRANTING the parties' 20 Joint Motion for Extension of Time to Complete Discovery, and MODIFYING the SCHEDULING ORDER issued on April 24, 2023, as follows: <br><br> 1. By January 24, 2024, discovery shall close, which discovery shall have the following limits: 25 interrogatories per party and 10 depositions per side, and the parties shall submit a joint status report advising the Court whether (a) they request a stay of proceedings and referral to mediation for some period; or (b) they anticipate the filing of dispositive motions; and <br><br> 2. By March 22, 2024, any dispositive motions shall be filed, with any oppositions due by April 26, 2024, and replies due by May 24, 2024. Signed by Judge Beryl A. Howell on November 27, 2023. (lcbah1) (Entered: 11/27/2023) |
| 11/28/2023 | | Set/Reset Deadlines: Discovery To Close by 1/24/2024. Dispositive Motions due by 3/22/2024. Oppositions due by 4/26/2024. Replies due by 5/24/2024. (mac) (Entered: 11/28/2023) |
| 01/04/2024 | 21 | MOTION for Protective Order by SHELLEY FINLAYSON. (Attachments: # 1 Text of Proposed Order Privacy Protective Order)(Robertson, L'Shauntee) (Entered: 01/04/2024) |
| 01/04/2024 | | MINUTE ORDER (paperless) DIRECTING that, by January 8, 2024, plaintiff submit to the Court any objections to defendant's 21 Motion for Protective Order, entry of which protective order may facilitate the progress of discovery in this case. Signed by Judge Beryl A. Howell on January 4, 2024. (lcbah1) (Entered: 01/04/2024) |
| 01/08/2024 | | Set/Reset Deadlines: Plaintiff Submission To The Court due by 1/8/2024. (mac) (Entered: 01/08/2024) |
| 01/08/2024 | 22 | RESPONSE TO ORDER OF THE COURT re Order, filed by ELAINE ABBOTT. (Attachments: # 1 Text of Proposed Order Protective Order)(ABBOTT, ELAINE) (Entered: 01/08/2024) |
| 01/10/2024 | | MINUTE ORDER (paperless) upon consideration of defendant's 21 Motion for Protective Order, and plaintiff's 22 Response, DIRECTING the parties to meet and confer and to file, by January 19, 2024, a joint Proposed Protective Order. If the parties fail to reach an agreement, they are DIRECTED to file, by January 19, 2024, a joint status report, identifying the specific disputed language in the Protective Order and explaining the parties' respective positions. Signed by Judge Beryl A. Howell on January 10, 2024. (lcbah1) (Entered: 01/10/2024) |
| 01/11/2024 | | Set/Reset Deadlines: Joint Proposed Protective Order or Joint Status Report due by 1/19/2024 (mac) (Entered: 01/11/2024) |
| 01/19/2024 | 23 | STATUS REPORT by SHELLEY FINLAYSON. (Attachments: # 1 Appendix A (Defendants Draft Joint Protective Order with Plaintiff's redlined revisions and commentar), # 2 Appendix B (Plaintiffs Objections and Proposed Provisions))(Robertson, L'Shauntee) (Entered: 01/19/2024) |

| 01/19/2024 | 24 | STATUS REPORT by ELAINE ABBOTT. (Attachments: # 1 Appendix Plaintiff's Appendix A, # 2 Appendix Appendix B − Red Line Changes, # 3 Appendix Appendix B1 − Red Line Changes)(ABBOTT, ELAINE) (Entered: 01/19/2024) |
|---|---|---|
| 02/06/2024 | | MINUTE ORDER (paperless) GRANTING, upon consideration of defendant's 21 Motion for Protective Order and 23 Status Report and plaintiff's 22 Response and 24 Status Report, defendant's 21 Motion for Protective Order.<br><br>Federal Rule of Civil Procedure 26(b) allows for "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Under Rule 26(c), a judge may, "for good cause," issue a protective order limiting, *inter alia*, the parties' ability to disseminate information discovered during litigation "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Trial courts have "broad discretion to decide when a protective order is appropriate and what degree of protection is required." *Standing Rock Sioux Tribe v. U.S. Army Corps. of Eng'rs*, 249 F. Supp. 3d 516, 520 (D.D.C. 2017) (alteration in original accepted) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). In making such decision, "courts balance the burdensomeness to the moving party against the requestor's need for, and relevance of the information sought," and "may also consider a variety of other factors, including the harm which disclosure would cause to the party seeking to protect the information." *Gilliard v. McWilliams*, 315 F. Supp. 3d 402, 409 (D.D.C. 2018) (citations omitted). Here, the parties agree that a protective order for discovery is appropriate and agree to many of its terms. Plaintiff objects to only three paragraphs of defendant's proposed protective order ("proposed PO"). Plaintiff's objections are OVERRULED.<br><br>Plaintiff objects to paragraphs 8, 11, and 18 of the proposed PO. Paragraph 8 prohibits the disclosure of "protected material" except to five standard categories of individuals: (1) the parties' current and former employees; (2) the parties' attorneys and those "regularly employed in or by such attorneys' offices"; (3) deposition and trial witnesses; (4) expert witnesses or consultants; and (5) "other persons as reasonably necessary for the preparation, trial, appeal or settlement of the case identified herein." 24 Pl.'s Status Rep. at 1. Paragraph 11 provides that if "protected material" is disclosed to any person other than the parties or their attorneys, such person must "be advised by the attorney making the disclosure that pursuant to this Protective Order such person may not divulge any such Protected Material to any other person not authorized under Paragraph 8" and must certify as such in writing. *Id.* at 5. Paragraph 18 provides that if "protected material" is disclosed to an unauthorized person, "the Party responsible for having made or allowed such disclosure... must immediately inform [the] Party whose Protected Material has thus been disclosed of all relevant information concerning the nature and circumstances of such disclosure" and "must also take all reasonable measures promptly to ensure that no further or greater unauthorized disclosures of the Protected Material is made by anyone." *Id.* at 6.<br><br>Plaintiff does not object to the idea animating each paragraph but seeks to impose additional limitations, including but not limited to, (1) requiring all recipients of "confidential information" to sign a "Binding Confidential Agreement"; (2) forbidding any discovery produced by plaintiff to be shared with the individuals alleged to have discriminated against plaintiff, even if they are witnesses, in this action; (3) prohibiting defendant from "using shared printer/copier/scanner office equipment and/or other shared electronic devices and media to access and handle the Plaintiff's confidential |

| | | |
|---|---|---|
| | | information"; and (4) requiring court intervention if confidential information is disclosed to an unauthorized individual. *Id.* at 2−6. These restrictions are impracticable and unduly burdensome. Defendant's proposed provisions are standard PO provisions that sufficiently protect the privacy interests at stake, while recognizing the realities of litigation and the accompanying need to exchange information through broad discovery to ensure that both sides have all the information necessary for their claims or defenses and are adequately prepared.<br><br>Accordingly, defendant's Motion for a Protective Order is granted. A protective order will be entered separately.<br><br>Signed by Judge Beryl A. Howell on February 6, 2024. (lcbah1) (Entered: 02/06/2024) |
| 02/06/2024 | 25 | PROTECTIVE ORDER. Signed by Judge Beryl A. Howell on February 6, 2024. (lcbah1) (Entered: 02/06/2024) |
| 02/12/2024 | 26 | MOTION to Modify *Scheduling Order* by ELAINE ABBOTT. (ABBOTT, ELAINE) (Entered: 02/12/2024) |
| 02/13/2024 | | MINUTE ORDER (paperless) DIRECTING defendant, by February 15, 2024, to provide its position on plaintiff's 26 Motion to Modify Scheduling Order, and specifically address whether plaintiff has accurately captured defendant's position that defendant "agree[s] to a 30−day period for the Parties to update and comport Discovery responses," "but opposes modifying the Court's Scheduling Order to account for that adjustment," *see* 26 Pl.'s Mot. to Modify at 2, in light of the fact that this would mean that plaintiff would not finish producing discovery until March 12, 2024—less than two weeks before dispositive motions are due, *see* Min. Order (Nov. 27, 2023). Signed by Judge Beryl A. Howell on February 13, 2024. (lcbah1) (Entered: 02/13/2024) |
| 02/14/2024 | | Set/Reset Deadlines: Defendant Position On Plaintiff's 26 Motion To Modify Scheduling Order due by 2/15/2024. (mac) (Entered: 02/14/2024) |
| 02/15/2024 | 27 | RESPONSE TO ORDER OF THE COURT by SHELLEY FINLAYSON re Order, (Attachments: # 1 Exhibit 1)(Robertson, L'Shauntee) Modified event on 2/15/2024 (mg). (Entered: 02/15/2024) |
| 02/15/2024 | | MINUTE ORDER (paperless) GRANTING IN PART plaintiff's 26 Motion to Modify Scheduling Order, and MODIFYING the Scheduling Order issued on November 27, 2023, as follows:<br><br>1. By January 24, 2024, discovery shall close, which discovery shall have the following limits: 25 interrogatories per party and 10 depositions per side;<br><br>2. By March 13, 2024, the parties shall provide any supplemental responses to currently existing discovery requests, in light of the Court's 25 Protective Order; *see also* Min. Order (Feb. 6, 2024); and the parties shall submit a joint status report advising the Court whether (a) they request a stay of proceedings and referral to mediation for some period; or (b) they anticipate the filing of dispositive motions; and<br><br>3. By April 12, 2024, any dispositive motions shall be filed, with any oppositions due by May 13, 2024, and replies due by June 13, 2024.<br><br>Signed by Judge Beryl A. Howell on February 15, 2024. (lcbah1) (Entered: 02/15/2024) |

| 02/16/2024 | | Set/Reset Deadlines: Discovery To Close by 1/24/2024. Parties Supplemental Memorandum due by 3/13/2024. Dispositive Motions due by 4/12/2024. Oppositions due by 5/13/2024. Replies due by 6/13/2024. (mac) (Entered: 02/16/2024) |
| --- | --- | --- |
| 03/13/2024 | 28 | STATUS REPORT by ELAINE ABBOTT. (ABBOTT, ELAINE) (Entered: 03/13/2024) |
| 03/14/2024 | | MINUTE ORDER (paperless) upon consideration of plaintiff's timely 28 Status Report, which requests "a stay of the proceedings and referral to mediation," DIRECTING defendant, by March 18, 2024, to provide its position on a stay for referral to mediation, which position is belated, *see* Min. Order (Feb. 15, 2024) (directing the parties to submit a joint status report by March 13, 2024). Signed by Judge Beryl A. Howell on March 14, 2024. (lcbah1) (Entered: 03/14/2024) |
| 03/15/2024 | | Set/Reset Deadlines: Defendant Position On A Stay For Referral To Mediation due by 3/18/2024. (mac) (Entered: 03/15/2024) |
| 03/15/2024 | 29 | NOTICE *re 03/14/2024MINUTE ORDER* by SHELLEY FINLAYSON re Order, (Robertson, L'Shauntee) (Entered: 03/15/2024) |
| 03/15/2024 | | MINUTE ORDER (paperless) upon consideration of plaintiff's 28 Status Report, requesting a stay for referral to mediation, and defendant's 29 Notice, opposing such stay based, in part, on plaintiff's failure to communicate her "settlement position" or any "clear settlement proposal" to defendant, STAYING this matter for referral to mediation, VACATING the deadline for dispositive motions set out in the Court's February 15, 2024 Minute Order, and DIRECTING the parties to file, by May 15, 2024, a joint status report, apprising the Court of the status of mediation, whether any disputes remain between the parties and, if so, proposing a schedule to govern further proceedings. An order of appointment of counsel for pro se plaintiff for the limited purpose of mediation and referral to the Mediation Program will be entered separately. Signed by Judge Beryl A. Howell on March 15, 2024. (lcbah1) (Entered: 03/15/2024) |
| 03/15/2024 | 30 | ORDER REFERRING CASE to Mediation and APPOINTING Counsel for the Limited Purpose of Mediation. Signed by Judge Beryl A. Howell on March 15, 2024. (lcbah1) (Entered: 03/15/2024) |
| 05/12/2024 | 31 | NOTICE OF ACKNOWLEDGMENT OF APPOINTMENT OF COUNSEL FOR THE LIMITED PURPOSE OF MEDIATION by ELAINE ABBOTT (ABBOTT, ELAINE) (Entered: 05/12/2024) |
| 05/15/2024 | 32 | Joint STATUS REPORT by SHELLEY FINLAYSON. (Robertson, L'Shauntee) (Entered: 05/15/2024) |
| 05/16/2024 | | MINUTE ORDER (paperless) EXTENDING, upon consideration of the parties' 32 Joint Status Report, the stay of all proceedings in this matter other than mediation until July 15, 2024; DIRECTING the parties to file, by July 15, 2024, a joint status report advising the Court whether the stay should be extended for continuation of mediation, or proposing a schedule for further proceedings in this matter; and DIRECTING plaintiff to provide to defendant, by May 23, 2024, the discovery responses she first attempted to provide to defendant on March 15, 2024, which discovery responses plaintiff has offered "to... re−send" in light of defendant's representation that she has "still not received" them, *see* 32 Joint Status Report at 2−3. Signed by Judge Beryl A. Howell on May 16, 2024. (lcbah1) (Entered: 05/16/2024) |
| 05/16/2024 | 33 | |

| | | |
|---|---|---|
| | | NOTICE of Appearance by Yveline Litha Dalmacy on behalf of ELAINE ABBOTT (Dalmacy, Yveline) Modified docket text on 5/17/2024 (mg). (Entered: 05/16/2024) |
| 05/20/2024 | | Set/Reset Deadlines: Parties Joint Status Report due by 7/15/2024 (mac) (Entered: 05/20/2024) |
| 07/15/2024 | 34 | Joint STATUS REPORT by SHELLEY FINLAYSON. (Robertson, L'Shauntee) (Entered: 07/15/2024) |
| 07/15/2024 | | MINUTE ORDER (paperless) upon consideration of the parties' 34 Joint Status Report, LIFTING the stay of this matter, and ISSUING the following SCHEDULING ORDER: (1) by September 6, 2024, defendant shall file any motion for summary judgment; (2) by October 4, 2024, plaintiff shall file any opposition and cross−motion for summary judgment; (3) by October 18, 2024, defendant shall file any reply and opposition to plaintiff's cross−motion; and (4) by November 1, 2024, plaintiff shall file any reply in support of the cross−motion. Signed by Judge Beryl A. Howell on July 15, 2024. (lcbah1) (Entered: 07/15/2024) |
| 07/16/2024 | | Set/Reset Deadlines: Defendant Motion For Summary Judgment due by 9/6/2024. Plaintiff Opposition And Cross−Motion For Summary Judgment due by 10/4/2024. Defendant Reply And Opposition To Plaintiff's Cross−Motion due by 10/18/2024. Plaintiff Reply In Support Of The Cross−Motion due by 11/1/2024. (mac) (Entered: 07/16/2024) |
| 09/06/2024 | 35 | STRICKEN FROM THE RECORD PER MINUTE ORDER ON 1/24/2025..... MOTION for Summary Judgment by SHELLEY FINLAYSON. (Attachments: # 1 Statement of Facts, # 2 Exhibit 1−7)(Robertson, L'Shauntee) (Entered: 09/06/2024) |
| 09/30/2024 | 36 | MOTION for Extension of Time to File Response/Reply by ELAINE ABBOTT. (ABBOTT, ELAINE) (Entered: 09/30/2024) |
| 10/01/2024 | | MINUTE ORDER (paperless) GRANTING plaintiff's 36 Motion for Extension of Time to File Response; and MODIFYING the SCHEDULING ORDER issued on July 15, 2024, as follows: (1) by November 15, 2024, plaintiff shall file any response to defendant's 35 Motion for Summary Judgment; (2) by December 2, 2024, defendant shall file any reply in support of its Motion for Summary Judgment. Signed by Judge Beryl A. Howell on October 1, 2024. (lcbah1) (Entered: 10/01/2024) |
| 11/12/2024 | 37 | Second MOTION for Extension of Time to File Response/Reply by ELAINE ABBOTT. (ABBOTT, ELAINE) (Entered: 11/12/2024) |
| 11/13/2024 | | MINUTE ORDER (paperless) GRANTING plaintiff's 37 Second Motion to Extend Time; and MODIFYING the SCHEDULING ORDER issued on October 1, 2024, as follows: (1) by November 22, 2024, plaintiff shall file any response to defendant's 35 Motion for Summary Judgment; (2) by December 9, 2024, defendant shall file any reply in support of its Motion for Summary Judgment. Signed by Judge Beryl A. Howell on November 13, 2024. (lcbah1) (Entered: 11/13/2024) |
| 11/22/2024 | 38 | RESPONSE re 35 MOTION for Summary Judgment filed by ELAINE ABBOTT. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit)(ABBOTT, ELAINE) (Entered: 11/22/2024) |
| 12/03/2024 | 39 | MEMORANDUM OPINION AND ORDER DENYING plaintiff's 38 Motion to Reopen Discovery; and DIRECTING plaintiff to file her opposition to defendant's 35 Motion for Summary Judgment by December 16, 2024; and DIRECTING defendant to file any reply to plaintiff's opposition by December 27, 2024. See Memorandum |

| | | |
|---|---|---|
| | | Opinion and Order for further details. Signed by Judge Beryl A. Howell on December 3, 2024. (lcbah1) (Entered: 12/03/2024) |
| 12/04/2024 | | Set/Reset Deadlines: Plaintiff Opposition To Defendant's 35 Motion for Summary Judgment Response due by 12/16/2024. Defendant Reply to Plaintiff's Opposition due by 12/27/2024. (mac) (Entered: 12/04/2024) |
| 12/10/2024 | 40 | Third MOTION for Extension of Time to File Response/Reply by ELAINE ABBOTT. (ABBOTT, ELAINE) (Entered: 12/10/2024) |
| 12/12/2024 | | MINUTE ORDER (paperless) GRANTING plaintiff's 40 Third Extension of Time; and DIRECTING plaintiff to file her opposition by December 30, 2024; and FURTHER DIRECTING the defendant to file any reply to plaintiff's opposition by January 10, 2025; and CAUTIONING plaintiff that no other extension to file her opposition will be granted absent extraordinary circumstances. Signed by Judge Beryl A. Howell on December 12, 2024. (lcbah1) (Entered: 12/12/2024) |
| 12/13/2024 | | Set/Reset Deadlines: Plaintiff Opposition due by 12/30/2024. Defendant Reply To Plaintiff's Opposition due by 1/10/2025. (mac) (Entered: 12/13/2024) |
| 12/30/2024 | 41 | STRICKEN FROM THE RECORD PER MINUTE ORDER ON 1/23/2025.....RESPONSE re 35 MOTION for Summary Judgment filed by ELAINE ABBOTT. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit)(ABBOTT, ELAINE) (Entered: 12/30/2024) |
| 01/07/2025 | 42 | Consent MOTION for Extension of Time to File Response/Reply as to 35 MOTION for Summary Judgment by SHELLEY FINLAYSON. (Robertson, L'Shauntee) (Entered: 01/07/2025) |
| 01/08/2025 | | MINUTE ORDER (paperless) GRANTING defendant's 42 Consent Motion for Extension of Time; and DIRECTING defendant to file any reply to plaintiff's 41 Response by January 24, 2025. Signed by Judge Beryl A. Howell on January 8, 2025. (lcbah1) (Entered: 01/08/2025) |
| 01/09/2025 | | Set/Reset Deadlines: Defendant Reply To Plaintiff's 41 Response due by 1/24/2025 (mac) (Entered: 01/09/2025) |
| 01/21/2025 | 43 | MOTION to Amend/Correct 41 Response to motion by ELAINE ABBOTT. (Attachments: # 1 Exhibit Proposed Amendment − PL Opp to Def MSJ, # 2 Exhibit Proposed Amendment − Red Line Changes)(ABBOTT, ELAINE) (Entered: 01/21/2025) |
| 01/21/2025 | 44 | AMENDED RESPONSE re 35 MOTION for Summary Judgment filed by ELAINE ABBOTT. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit, # 4 Exhibit, # 5 Exhibit, # 6 Exhibit, # 7 Exhibit, # 8 Exhibit, # 9 Exhibit, # 10 Exhibit, # 11 Exhibit, # 12 Exhibit, # 13 Exhibit, # 14 Exhibit, # 15 Exhibit, # 16 Exhibit, # 17 Exhibit, # 18 Exhibit, # 19 Exhibit, # 20 Exhibit, # 21 Exhibit, # 22 Statement of Facts, # 23 Statement of Facts, # 24 Declaration)(ABBOTT, ELAINE) Modified event title on 1/23/2025 (znmw). (Entered: 01/21/2025) |
| 01/23/2025 | 45 | Second MOTION for Extension of Time to File Response/Reply as to 35 MOTION for Summary Judgment by SHELLEY FINLAYSON. (Robertson, L'Shauntee) (Entered: 01/23/2025) |
| 01/23/2025 | | MINUTE ORDER (paperless) GRANTING plaintiff's 43 Motion to Amend/Correct Response; STRIKING plaintiff's 41 Response to defendant's 35 Motion for Summary |

| | | |
|---|---|---|
| | | Judgment; and DIRECTING defendant to reply to plaintiff's 44 Amended Response by February 10, 2025. Signed by Judge Beryl A. Howell on January 23, 2025. (lcbah1) (Entered: 01/23/2025) |
| 01/24/2025 | | Set/Reset Deadlines: Defendant Reply To Plaintiff's 44 Amended Response due by 2/10/2025. (mac) (Entered: 01/24/2025) |
| 02/10/2025 | 46 | REPLY to opposition to motion re 35 Motion for Summary Judgment filed by SHELLEY FINLAYSON. (Attachments: # 1 Exhibit 8, # 2 Exhibit 9, # 3 Exhibit 10, # 4 Exhibit 11, # 5 Exhibit 12, # 6 Exhibit 13, # 7 Exhibit 14)(Robertson, L'Shauntee) (Entered: 02/10/2025) |
| 06/07/2025 | 47 | NOTICE OF SUBSTITUTION OF COUNSEL by Dimitar Georgiev−Remmel on behalf of SHELLEY FINLAYSON Substituting for attorney LShauntee Robertson (Georgiev−Remmel, Dimitar) (Entered: 06/07/2025) |
| 07/21/2025 | 48 | ORDER GRANTING defendant's 35 Motion for Summary Judgment. See Order for further details. The Clerk of the Court is directed to close this case. Signed by Judge Beryl A. Howell on July 21, 2025. (lcbah1) (Entered: 07/21/2025) |
| 07/21/2025 | 49 | MEMORANDUM OPINION regarding defendant's 35 Motion for Summary Judgment. Signed by Judge Beryl A. Howell on July 21, 2025. (lcbah1) (Entered: 07/21/2025) |
| 07/22/2025 | 50 | CLERK'S JUDGMENT in favor of Defendant against Plaintiffon 07/22/25. (mac) (Entered: 07/22/2025) |
| 09/19/2025 | 51 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 49 Memorandum & Opinion, 48 Order on Motion for Summary Judgment, 39 Memorandum & Opinion, Order on Motion to Modify,,, by ELAINE ABBOTT. Filing fee $ 605, receipt number ADCDC−11972229. Fee Status: Fee Paid. Parties have been notified. (ABBOTT, ELAINE) (Entered: 09/19/2025) |

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ELAINE ABBOTT**<br><br>       Plaintiff,<br><br><br>  v.<br><br><br>**ERIC UELAND**<br>Acting Director, United States Office of<br>Government Ethics<br><br>       Defendant. | **CIVIL ACTION NO: 1:22-cv-02717-BAH** |

## <u>NOTICE OF APPEAL</u>

PLEASE TAKE NOTICE that Plaintiff Elaine Abbott hereby appeals to the United States Court of Appeals for the District of Columbia Circuit: the Memorandum Opinion and Order entered on July 21, 2025, granting Defendant's Motion for Summary Judgment against Plaintiff; *and* the Memorandum Opinion and Order denying Plaintiff's Motion for Relief pursuant to Federal Rule of Civil Procedure 56(d) entered on December 3, 2024, which conflicts with Minute Order, Item 2 entered on February 15, 2024, by The Honorable Beryl A. Howell, United States District Judge for the District of Columbia.

Dated: September 19, 2025            Respectfully Submitted,

                                          */s/ Elaine Abbott*_____
                                          Elaine Abbott
                                          Plaintiff, Appearing *Pro Se*
                                          [Note Docket Entries:
                                          Minute Order September 14, 2022,
                                          and ECF No. 4 September 19, 2022]
                                          Email: discriminationlawsuitvoge@protonmail.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY THAT the foregoing Notice of Appeal has been served upon Defendant by CM/ECF electronic notification on September 19, 2025, via his attorney of record, Dimitar P. Georgiev-Remmel, Assistant U.S. Attorney, Civil Division, 601 D Street, N.W., Washington, DC 20530.

*/s/ Elaine Abbott*_____
Elaine Abbott

2

AO 450 (Rev. 01/09; DC-03/10)  Judgment in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia



**FILED**

**JUL 2 2 2025**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

|  |  |
|---|---|
| ELAINE ABBOTT | ) |
| *Plaintiff* | ) |
| v. | ) |
| JAMESON GREER | ) |
| *Defendant* | ) |

Civil Action No. 22-2717 (BAH)

## JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

☐  the plaintiff *(name)* _____ recover from the
defendant *(name)* _____ the amount of
_____ dollars ($ ___ ), which includes prejudgment
interest at the rate of ___ %, plus postjudgment interest at the rate of ___ %, along with costs.

☐  the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)*
_____ recover costs from the plaintiff *(name)*

☑  other:  judgment be entered in favor of defendant.

This action was *(check one)*:

☐  tried by a jury with Judge _____ presiding, and the jury has
rendered a verdict.

☐  tried by Judge _____ without a jury and the above decision
was reached.

☑  decided by Judge BERYL A. HOWELL _____ on a motion for

summary judgment by the defendant.

Date: ___07/22/2025___

*ANGELA D. CAESAR, CLERK OF COURT*

_____

*Signature of Clerk or Deputy Clerk*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ELAINE ABBOTT, | |
| Plaintiff, | |
| v. | Civil Action No. 22-2717 (BAH) |
| | Judge Beryl A. Howell |
| JAMIESON GREER, *Acting Director, U.S. Office of Government Ethics*, | |
| Defendant. | |

**MEMORANDUM OPINION**

Plaintiff Elaine Abbott, proceeding *pro se*, filed her complaint in August 2022, *see* Compl., ECF No. 1, and her amended complaint in September 2023, *see* ECF No. 16, alleging that, when she was employed by the United States Office of Government Ethics ("the Office"), she was subjected to discrimination, prompting her claims against Jamieson Greer, the Office's Acting Director ("defendant").[1] Specifically, she claims employment discrimination on the basis of race and sex (Count 1), age (Count 4), and disability (Count 5) when she was denied a promotion from a GS-9 to GS-11 grade level, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), and the Rehabilitation Act of 1973. Am. Compl. ¶¶ 51-57, 75-85. She also alleges she was retaliated against for protected Equal Employment Opportunity ("EEO") activity (Count 2), and subjected to a hostile work environment and constructive discharge (Count 3), in violation of Title VII. *Id.* ¶¶ 58-68. After nine months of discovery, *see Abbott v. Finlayson* ("*Abbott I*"), No. 22-cv-2717

---

[1]     Although plaintiff originally named as a defendant the former Acting Director of the United States Office of Government Ethics, the current holder of the position is "automatically substituted as a party" in her place, pursuant to Federal Rule of Civil Procedure 25(d).

1

(BAH), 2024 WL 4957215, at *1 (D.D.C. Dec. 3, 2024), defendant has moved for summary

judgment as to all claims, Def.'s Mot. Summ. J. ("Def.'s Mot.") at 1, ECF No. 35.  For the

reasons explained herein, defendant's motion is granted.

## I.    BACKGROUND

The relevant factual background and procedural history is summarized below.

### A.    Factual Background

Plaintiff, a self-described Black, Mixed-Heritage woman over the age of 40 with a

gastrointestinal condition, who holds a Master of Business Administration (MBA) and a Master

of Public Policy (MPP), has a long history of federal employment.  Def.'s Mot., Def.'s Statement

of Undisputed Material Facts ("SUMF") ¶ 1, ECF No. 35-1; Pl.'s Opp'n Def.'s Mot. ("Pl.'s

Opp'n"), Attach. 1, Declaration of Elaine Abbott ("Pl.'s Decl.") ¶¶ 3-6, ECF No. 44-24.[2]  For

twelve years, she was an Equal Employment Opportunity practitioner at the Department of Labor

("DOL"), where she conducted "EEO investigations and was the primary factfinder who

determined if unlawful discrimination occurred in private sector workforces with federal

contracts to conduct business with the U.S. government."  Pl.'s Decl. ¶ 4.  At that job, she

achieved a GS-12 grade level.  *Id.* ¶ 4 n.2.

Plaintiff left her employment with the DOL to serve as a GS-9 government ethics

program analyst within the Program Review Branch of the Office starting on January 9, 2017,

until February 22, 2018.  SUMF ¶ 2, 15; Pl.'s Decl. ¶ 5.  Though suffering from a

gastrointestinal condition, she performed her job duties as a program analyst without a

reasonable accommodation.  SUMF ¶ 5.  During her employment, she reported to Douglas

---

[2]    Unless otherwise noted, the facts are not disputed.

Chapman, who reported directly to Dale Christopher, both of whom were White males. *Id.* ¶¶ 3-4.

Ten months after starting her job, plaintiff met with Chapman, on October 2, 2017, and asked about the criteria he would use to evaluate her potential promotion to the GS-11 level. *Id.* ¶ 7. Chapman told plaintiff that she would be eligible for a promotion "after a year" but that it was "not guaranteed." *Id.* Four days later, on October 6, 2017, plaintiff served as a witness in support of an EEO complaint filed against Chapman by a coworker. *Id.* ¶ 6; Pl.'s Opp'n at 13.

Roughly a month later, on November 6, 2017, Grace Clark ("Clark"), a liaison between the Office and the outside agency handling its EEO complaint processing, received a report of investigation identifying plaintiff as a supporting witness for her colleague's EEO complaint against Chapman. Def.'s Mot, Ex. 6A, Declaration of Grace Clark, Former EEO Program Liaison, ("Clark Decl.") at ¶ 6, ECF No. 35-2. Clark did not share the complaint with Chapman or Christopher nor inform them of any information concerning the complaint, and no evidence in the record indicates that either Chapman or Christopher received the investigation report or knew of plaintiff's participation in her coworker's complaint. *Id.* ¶ 7; *see generally* Def.'s Mot., Exhibits 1-7, ECF No. 35-2; Pl.'s Opp'n, Exhibits A-U, ECF Nos. 44-1 to 44-21; Pl.'s Decl.; Def.'s Reply Supp. Mot. (Def.'s Reply"), Exhibits 8-11, ECF Nos. 46-1 to 46-7; Pl.'s Statement of Material Facts in Dispute, ECF No. 44-22.

Roughly two hours after Clark received the report, Chapman called plaintiff into his office and confronted her about work she had been assigned but had not timely completed. SUMF ¶ 10; Pl.'s Opp'n at 13.[3] Plaintiff describes Chapman's behavior in the meeting as

---

[3]    Plaintiff "disputes" that she "had not completed" the work but acknowledges that she had not yet sought Chapman's approval to post the assignment on the agency's webpage. Pl.'s Resp. ¶ 10. Whether failing to seek Chapman's approval and posting the assignment online means that plaintiff had not "completed" the assignment is immaterial to the instant dispute.

3

"angry, hostile, and antagonistic," without any other details.  Pl.'s Decl. ¶ 8.  The next day,

November 7, 2017, plaintiff met with Christopher to discuss Chapman's behavior towards her in

the previous day's meeting.  SUMF ¶ 11.  During the meeting, "Plaintiff gestured and said she

could not get the words out about how . . . Chapman had been mistreating her" and said that "she

now believed she would not get past GS-9."  Pl.'s Opp'n at 22-23 (quoting Report of

Investigation "ROI"); *see also* Am. Compl. ¶ 63 ("When asked what happened [in the meeting],

Plaintiff was unable to speak about how . . . Chapman had acted towards her.").[4]  After the

meeting, Christopher did not initiate an investigation into Chapman's behavior.  Am. Compl. ¶

63; Def.'s Answer to Pl.'s Am. Compl. ("Def.'s Answer Am. Compl"), at ¶ 63, ECF No. 18.

On January 9, 2018, a year after starting her position, plaintiff became eligible for, but

did not receive, a promotion to the GS-11 grade level, while all other employees who had

completed 52 weeks, at lower grade levels, were promoted.  SUMF ¶ 12.  A little more than a

month later, on February 22, 2018, plaintiff emailed Chapman and Christopher, demanding that

she be provided with the status of her promotion in writing by the close of business that day.  *Id.*

¶ 13; Pl.'s Opp'n, Ex. G, Email from Pl. to Chapman and Christopher ("Status Email"), at 9,

ECF No. 44-7.  Shortly after receiving her email, Christopher called Chapman and plaintiff into

his office for a meeting.  *Id.* ¶ 14.  Plaintiff communicated that she did not want to attend the

meeting but reluctantly did so.  *Id.*  At the meeting, Christopher "was mad," "started in on [her],"

"was stomping his foot," and told her she "was not entitled to a promotion," "he didn't like her

demeanor and the tone" of her email, and she would get a response to her inquiry but not on her

timeline.  Def.'s Mot., Ex. 3, Pl.'s Equal Employment Opportunity Commission ("EEOC")

---

[4]       Plaintiff repeatedly quotes or cites to the ROI in her opposition, but no party has provided the underlying report to verify the quotes or citations.  Nevertheless, for purposes of resolving defendant's motion, the quoted parts of the ROI inserted in plaintiff's opposition are assumed to be accurate.

Testimony ("Pl.'s Hrg. Tr."), at 63-66, ECF No. 35-2; Pl.'s Opp'n, Ex. G, 2d Email from Pl. to Christopher & Chapman, at 3, ECF No. 44-7.  The meeting "frightened [her] to such an extent [she] became . . . physically ill and emotionally distraught."  Pl.'s Decl. ¶ 9.

After the meeting, plaintiff did not report to work again.  SUMF ¶ 15.  On March 2, 2018, plaintiff's physician signed official Family Medical Leave Act ("FMLA") paperwork, and on March 14, 2018, her FMLA leave was approved.  Pl.'s Decl. ¶¶ 10, 12.  On July 6, 2018, she sent an email to the agency indicating that she needed to know her position, duties, and supervisors if she returned in order to prepare a return-to-work assessment.  SUMF ¶ 16.  On July 18, 2018, plaintiff was informed that she would be returned to her GS-9 program analyst position and that her supervisors, Chapman and Christopher, would be unchanged.  *Id.* ¶ 17.  By letter dated August 3, 2018, plaintiff tendered her "involuntary resignation" from the Office.  *Id.* ¶ 19.

Since plaintiff never returned to work after the February 22, 2018, meeting, she learned of the reason she was not promoted to the GS-11 grade level after filing an EEO complaint and the EEOC initiated its proceedings.  Pl.'s Opp'n at 8; SUMF ¶¶ 15-19.  In those proceedings, Chapman explained, by way of written affidavit, on September 13, 2018, that "to receive a career ladder promotion, an employee must demonstrate the ability to perform at the grade to which they would be promoted."  Def.'s Mot., Ex. 2, Chapman's September 18, 2018, EEO Investigative Aff. ("Chapman Aff."), at 2, ECF No. 35-2.  Plaintiff, however, "was a GS-9 and did not demonstrate that she was able to perform at the GS-11 level."  *Id.*  In testimony before the EEOC, Chapman reiterated that "the decision to promote is based on an indication that an employee has demonstrated they can perform at the next higher level[,] and I just didn't see that with [plaintiff]."  *Id.*, Ex. 1, Chapman's Feb. 24, 2020, EEOC Testimony ("Chapman's Hrg. Tr."), at 92:9-13, ECF No. 35-2.  He explained that "on a number of occasions she was given

5

specific instructions [and] shown how to do certain tasks and she just wasn't able to accomplish those tasks in a reasonable amount of time" even "with close supervision." *Id.* at 92:16-22. Chapman stated that "[i]n the last few months of 2017," he and plaintiff "had many conversations about her performance," and based on seeing what plaintiff could "do and not do, her performance just didn't warrant a promotion." *Id.* 93:1-14.

      **B.**    **Procedural History**

      Plaintiff filed her EEO complaint on May 25, 2018, representing herself *pro se*. Pl.'s Decl. ¶ 17. The EEOC held administrative proceedings, which included oral testimony where parties could conduct direct and cross examination of witnesses. *Id.* ¶ 17a; *see generally, e.g.*, Chapman's Hrg. Tr. (showing that the EEOC administrative judge conducted a direct examination of Chapman and that plaintiff cross-examined Chapman); Pl.'s Hrg. Tr. (showing that the EEOC administrative judge conducted a direct examination of plaintiff and that defendant's representative cross-examined plaintiff). Plaintiff exhausted her administrative procedures and remedies prior to filing her complaint in this case on August 22, 2022. *Id.* ¶ 17a; *see* Compl., ECF No. 1; Def.'s Mem. Supp. Mot. ("Def.'s Mem."), ECF No. 35 (not disputing that plaintiff administratively exhausted her claims).

      After defendant answered plaintiff's original complaint, *see* Answer, ECF No. 12, the parties proposed a schedule for discovery, Meet & Confer Statement, ECF No. 13, and, in accord with their proposed schedule, discovery proceeded for nine months, from April 24, 2023, until January 24, 2024, *see* Min. Orders (Nov. 27, 2023, and April 24, 2024). During the discovery period, plaintiff propounded and received responses to "over 100 . . . discovery requests." *Abbott I*, 2024 WL 4957215, at *2. Additionally, plaintiff filed and received documents responsive to requests filed pursuant to the Freedom of Information Act, 5 U.S.C. § 522. *Id.* In the midst of discovery, plaintiff filed her first amended complaint, on September 8, 2023, *see*

6

Am. Compl., which defendant answered on October 10, 2023, *see* Def.'s Answer Am. Compl. Following discovery and an unsuccessful mediation, *see* Joint Status Report, ECF No. 34, defendant moved, in September 2024, for summary judgment, *see* Def.'s Mot., to which plaintiff's response was originally due on October 4, 2024, but after being granted two extensions, *see* Min. Orders (Oct. 1 and Nov. 13, 2024) (granting Pl.'s Mots. for Extension of Time, ECF Nos. 36, 37), was due on November 22, 2024.

Instead of filing a response directed at the arguments in the pending summary judgment motion, plaintiff sought to reopen discovery, pursuant to Federal Rule of Civil Procedure 56(d), Pl.'s Mot. to Reopen Discovery, ECF No. 38, which was denied, *see Abbott I*, 2024 WL 4957215, at *1. Plaintiff was *sua sponte* granted a third extension to file any opposition, *id.* at *2, and defendant's motion for summary judgment ripened in February 2025.

## II.    LEGAL STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is 'material' if a dispute over it might affect the outcome of a suit under governing law," meaning that "factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Mayorga v. Merdon*, 928 F.3d 84, 89 (D.C. Cir. 2019) (quoting *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006)). A "genuine" dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Holcomb*, 433 F.3d at 895). Thus, "[i]n considering a motion for summary judgment, judges must ask themselves not whether they think 'the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented,'" because that evidence is such that "the jury could reasonably find for the

7

plaintiff." *Stoe v. Barr*, 960 F.3d 627, 638 (D.C. Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

"Although a moving party may not be required to support its motion with affidavits, it is still clear that summary judgment should only be granted in cases when 'whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied.'" *Beatty v. Wash. Metro. Area Transit Auth.*, 860 F.2d 1117, 1120 (D.C. Cir. 1988) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "[T]he Federal Rules of Civil Procedure explicitly require a party opposing summary judgment to support an assertion that a fact is genuinely disputed with materials in the record," *Oviedo v. Wash. Metro. Area Transit Auth.*, 948 F.3d 386, 396 (D.C. Cir. 2020) (citing FED. R. CIV. P. 56(c)), since otherwise "[a]ccepting [] conclusory allegations as true . . . would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

While a "[a] document filed *pro se* is 'to be liberally construed,'" *Oviedo*, 948 F.3d at 392 (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), at summary judgment a *pro se* plaintiff cannot rest her case on "unsupported allegation[s]," and must produce evidence "from which a reasonable jury could find in [her] favor," *id.* at 397.

## III.    DISCUSSION

Defendant argues that plaintiff's claims fail because the record shows that "there is no genuine dispute of material fact that Plaintiff did not suffer discrimination due to disability, age, sex, race, or protected activity, nor did she experience a hostile work environment." Def.'s Reply at 1. Further, defendant contends that plaintiff has failed to point to any evidence in the record that "rebut[s] any of Defendant's legitimate reasons for the alleged adverse actions she

experienced." *Id.* Plaintiff counters that "the preponderance of factual evidence" supports her discrimination claim and that she "has shown that the purportedly legitimate, non-discriminatory reason for the adverse actions Defendant . . . took against her [was] . . . pretext for unlawful discrimination." Pl.'s Opp'n at 57-58. As discussed below, plaintiff's claims cannot survive summary judgment and, consequently, defendant's motion is granted.

### A.    Plaintiff's Failure-to-Promote Claims (Count 1, 4, and 5) Fail.

"Title VII protects employees from 'discrimination based on race, color, religion, sex, or national origin,'" *Coleman v. Duke*, 867 F.3d 204, 205-06 (D.C. Cir. 2017) (quoting 42 U.S.C. § 2000e–16(a)), the ADEA "prohibits discrimination in employment on the basis of age (40 years of age or older)," *id.* (citing 29 U.S.C. §§ 623(a)(1), 631(a)), and the Rehabilitation Act "provides that '[n]o otherwise qualified individual with a disability' may 'be subjected to discrimination' by any federal agency 'solely by reason of her or his disability,'" *Mogenhan v. Napolitano*, 613 F.3d 1162, 1165 (D.C. Cir. 2010) (quoting 29 U.S.C. § 794(a)). Under these three statutes, "the two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, national origin, age, or disability." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). Where a plaintiff lacks direct evidence of alleged discrimination, such claims are evaluated using the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

At summary judgment, however, "[i]n cases where the employee has suffered an adverse action and the employer has asserted a legitimate, non-discriminatory reason for that action, [a court] do[es] not consider the *McDonnell Douglas* prima facie factors." *Baloch*, 550 F.3d at 1197 n.2. Instead, a court "ask[s] only whether 'the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual

reason and that the employer intentionally discriminated against the employee' on an impermissible ground." *Id.* (quoting *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008)); *see also Mawakana v. Bd. of Trs. of Univ. of the D.C.*, 926 F.3d 859, 866 (D.C. Cir. 2019) ("If the employer has already proffered a legitimate, nondiscriminatory reason for its adverse employment action, however, the court skips straight to 'the ultimate question of discrimination *vel non*.'" (quoting *George v. Leavitt*, 407 F.3d 405, 411-12 (D.C. Cir. 2005))). In other words, at this juncture, "[t]he evidence of record must be such that a reasonable jury could not only disbelieve the employer's reasons, but conclude that the real reason the employer took a challenged action was a prohibited one." *Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015); *see also Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008) ("[I]f an employer asserts a legitimate, nondiscriminatory reason for an adverse employment action, the district court must conduct one central inquiry in considering an employer's motion for summary judgment or judgment as a matter of law: whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis.").

Defendant has offered a legitimate, non-discriminatory reason for withholding plaintiff's promotion: while plaintiff met the expectations for the GS-9 level, she did not demonstrate that she could perform at the higher GS-11 level. Chapman's Aff. at 2; Chapman's Hrg. Tr. at 92-93. For example, "on a number of occasions [plaintiff] was given specific instructions [and] was shown how to do certain tasks [but] she just wasn't able to accomplish those tasks in a reasonable amount of time." Chapman Hrg. Tr. at 92:16-22. Further, Chapman had several conversations with her about her performance in the months preceding her benchmark date,

10

giving her opportunities to demonstrate and resolve specific performance concerns. *Id.* at 93:1-14. Given her performance, plaintiff was not promoted. *Id.*

Plaintiff may support an inference that defendant's stated reason for withholding her promotion was "pretextual by citing a number of possible sources of evidence, including 'the employer's better treatment of similarly situated employees outside the plaintiff's protected group, its inconsistent or dishonest explanations, its deviation from established procedures or criteria, [] the employer's pattern of poor treatment of other employees in the same protected group as the plaintiff, or other relevant evidence that a jury could reasonably conclude evinces an illicit motive." *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1115 (D.C. Cir. 2016) (quoting *Walker*, 798 F.3d at 1092). In plaintiff's view, certain evidence supports an inference that defendant's stated reason for denying her promotion, *i.e.*, her inability to perform at the GS-11 grade level, was mere pretext for discrimination on the basis of race, sex, age, and disability. None does so.

First, she argues that she received a "positive performance appraisal," reflecting a "pass" rating on a pass-fail evaluation system on all performance elements, had a "clean disciplinary record," and Chapman, in an email after her continued absence from work, called her an "integral member" of the office. Pl.'s Opp'n at 6-9. Defendant, though, has never argued that plaintiff was a poor employee, readily admitting that her performance was consistent with the expectations at the GS-9 grade level and that GS-9 grade level employees can be integral to the Office's work. *See* Def.'s Reply at 3-4 ("[T]he Office [has] never claimed that Plaintiff somehow failed to perform, and it in fact agreed that she did perform well at her [then] current grade level of GS-9. It was performance at the higher GS-11 level to which Plaintiff aspired that the Office explained she failed to demonstrate proficiency."). In any event, pointing to "pass"

11

ratings in her performance evaluations and her being referred to as an "integral member" to support an inference of discrimination is insufficient because the evaluation and performance description is "only relevant to [her] GS-[9] abilities . . . and do[es] not clearly show that [s]he was able to perform the tasks of the next level." *Bolden v. Winter*, 602 F. Supp. 2d 130, 140 (D.D.C. 2009). Further, there is no evidence that a disciplinary record, clean or otherwise, had anything "to do with [an] assessment that she failed to show she could perform at the higher grade level," Def.'s Reply at 4. In other words, plaintiff's satisfactory GS-9 grade level performance, without more, does not give rise to an inference that her promotion was withheld on a discriminatory basis as opposed to her inability to perform at the GS-11 grade level as Chapman testified and explained before the EEOC.

Second, plaintiff argues that her prior achievement of a GS-11 grade level "approximately 20 years before working for [the Office] and" other work "at the higher GS-12 grade level for approximately 10 years with two different federal agencies" supports an inference that she was qualified for her promotion to GS-11 at the Office and that the reason for withholding the level she had previously achieved in other jobs was discriminatory. Pl.'s Opp'n at 5-6. Plaintiff provides no evidence or arguments explaining why or how her prior employment is relevant to evaluate whether she was able to perform at GS-11 grade level at her job with the Office. Her prior employment at higher grade levels at different jobs, with different responsibilities and different supervisors, and at different government agencies without facts or arguments linking her prior employment to the demands and needs of her employment at the Office does not permit a reasonable inference of discrimination. *See* Pl.'s Decl. ¶ 5 (describing her employment at the Office as having "notable differences" from her prior employment); *cf. Wilson v. Clayton*, No. 16-cv-133 (CRC), 2019 WL 1879547, at *11 (D.D.C. Apr. 27, 2019)

(noting a lack of discriminatory inference in a lower performance rating where a plaintiff's "supervisor changed" because the new supervisor "may have had different expectations or standards than his predecessors").

Third, plaintiff argues that despite her promotion being withheld, she was assigned an advanced workload commensurate with a higher grade level, supporting an inference of discrimination because this indicates her qualification for her desired promotion. Pl.'s Opp'n at 7–8. The email from Chapman, on February 22, 2018, assigning the purportedly GS-11 grade level workload cited as evidence specifically provides that he tried "to break the assignments down by anticipated complexity . . . and duration." Pl.'s Opp'n, Ex. B, Email from Chapman to PRB MailGroup, at 1, ECF No. 44-2. No evidence suggests that plaintiff's assignments were as complex, or would be as time consuming, as her colleagues who did receive promotions to the GS-11 grade level. Simply being assigned additional work does not lead to a reasonable inference that plaintiff was qualified for a GS-11 grade level promotion. *See Bolden*, 602 F. Supp. 2d at 139 ("[Plaintiff] has similarly produced evidence that he had a large volume of work and had taken on duties of an employee of higher grade. This, however, is insufficient because plaintiff does not demonstrate that 'duties alone were sufficient to support a promotion.'" (quoting *Kilby-Robb v. Spellings*, 522 F. Supp. 2d 148, 157 (D.D.C. 2007))). Further, plaintiff does not provide evidence that she in fact completed the assigned workload, or if she did, that the completed assignments reflected a higher grade level performance. *Cf. Kilby-Robb*, 522 F. Supp. 2d at 157 ("Even assuming that she performed all of the duties she claims to have performed . . . she has not demonstrated that such duties alone were sufficient to support a promotion in grade or salary.").

Fourth, plaintiff argues that she "was treated differently from similarly situated employees who [were] not part of the protected class." *George*, 407 F.3d at 412; Pl.'s Opp'n at 11-12, 50. Plaintiff highlights as comparators two male program analysts, RL and TD, both of whom were outside of plaintiff's self-identified race, had known medical conditions, and were under the age of 40, who were promoted from GS-9 to GS-11 grade level before she arrived at the Office. Pl.'s Opp'n at 11-12, 50; Chapman's Aff. at 13.[5] Neither comparator suffices. To be similarly situated, a "plaintiff must . . . demonstrate that 'all of the relevant aspects of her employment situation were nearly identical to those of [her comparators].'" *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999) (internal quotation marks omitted) (quoting *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995)). "Factors that bear on whether someone is an appropriate comparator include the similarity of the plaintiff's and the putative comparator's job and job duties [and] whether they were disciplined by the same supervisor." *Wheeler*, 812 F.3d at 1116 (quoting *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015)). Evidence shows RL reported to and was recommended for a promotion by a different supervisor in 2016, not Chapman, rendering him dissimilarly situated. Def.'s Reply, Ex. 10, Request for Personnel Action, at 1, ECF No. 46-3 (showing a different supervisor requesting RL's promotion); Pl.'s Opp'n at 12 (recognizing "RL . . . was under a different . . . supervisor"); *see Joyner v. Morrison & Foerster LLP*, 140 F.4th 523, 533 (D.C. Cir. 2025) ("Our cases have repeatedly recognized that whether the same decisionmakers were involved is relevant to whether two employees were similarly situated."). As to TD, plaintiff testified that, despite holding the same title as her, he "had ancillary duties that were different"

---

[5]     Though nothing in the record establishes that RL or TD were under the age of 40 at the time of their promotions, *see* Def.'s Mot., Exhibits 1-7, ECF No. 35-2; Pl.'s Opp'n, Exhibits A-U, ECF Nos. 44-1 to 44-21; Pl.'s Decl.; Def.'s Reply Supp. Mot. (Def.'s Reply"), Exhibits 8-11, ECF Nos. 46-1 to 46-7, for purposes of this motion, plaintiff's representation that TD and RL were under the age of 40, *see* Pl.'s Opp'n at 48, is assumed to be true.

from her and that her "duties . . . were more extensive and . . . important." Pl.'s Hrg. Tr., at 181-82. In her opposition to defendant's motion for summary judgment, plaintiff also states she "took on substantial" duties compared to TD. Pl.'s Opp'n at 4 n.2. Plaintiff's acknowledgement of her "more extensive" and "important" duties strongly cuts against a reasonable inference that she was "actually similarly situated to him." *Montgomery v. Chao*, 546 F.3d 703, 707 (D.C. Cir. 2008) (citation and internal quotation mark omitted). Accordingly, neither TD or RL were similarly situated, and "an inference of falsity or discrimination is not reasonable" based on any actual or perceived differential treatment. *Id.*

In a similar vein, plaintiff claims she "was performing her program review duties at the level of (or better than) her promoted . . . comparators." Pl.'s Opp'n at 13; *id.* at 50 ("Chapman withheld Plaintiff's promotion even though her performance was equal to, arguably better than, her two under age 40 Comparators," RL and TD). As already noted, neither RL nor TD are appropriate comparators. Further, she submits a spreadsheet, which construed liberally, reports that in 2017 she worked on more assignments than RL or TD as the only evidence to support this argument. *Id.*, Ex. D, FY 2017 Report Numbers, at 1, ECF No. 44-4. The purported exhibit does not show whether (1) she in fact timely completed more assignments than her purported comparators; (2) her assignments were equally, or more, challenging, complex, or time consuming than her comparators' assignments; and (3) if she did complete them, she did so in a manner that was equal to or better than them. This single exhibit lacking critical information simply "does not present evidence from which a reasonable jury could find . . . that [her] performance was better than [the Office] claims." *Johnson v. Perez*, 823 F.3d 701, 707 (D.C. Cir. 2016). Left without evidence supporting her position, plaintiff's "own personal opinion" about her work performance, Pl.'s Decl. ¶ 7, "is inadequate by itself to create an issue for the

15

jury." *Walker*, 798 F.3d at 1094; *see also Vatel v. All. of Auto. Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011) ("It is settled that 'it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.'" (quoting *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000))).

Moreover, despite being dissimilarly situated and thus of limited relevance, the proffered "comparator" evidence actually supports defendant's explanation for plaintiff's non-promotion. RL's review noted he "continues to develop ever-increasing expertise that is more than commensurate with his grade," Def.'s Reply, Ex. 12, RL Performance Appraisal, at 4, ECF No. 46-5, and TD's review stated his "contributions to the [Office's] work and accomplishments . . . exceed what would be expected based on his grade and level of experience," *id.*, Ex. 13, TD Performance Appraisal, ECF No. 46-6.  No such commentary suggesting plaintiff could perform at a higher grade level is present in plaintiff's review, and she does not argue that her review is not reflective of her performance or that TD and RL's reviews overstate their performance.  *See id.*, Pl.'s Performance Appraisal, ECF No. 46-7; Pl.'s Opp'n.  Additionally, the only other individual who reported to Chapman and received a promotion—albeit from a different grade level and thus not a similarly situated coworker—during the relevant time was a person who shared *all* of plaintiff's protected characteristics, weakening an inference of discrimination. Chapman's Aff. at 13; *see, e.g.*, *Murray v. Gilmore*, 406 F.3d 708, 715 (D.C. Cir. 2005) ("[Plaintiff's] race discrimination claim . . . fails because even assuming pretext, [the employer] replaced [plaintiff], an African American, with [an individual], also an African American.  While [plaintiff] can make out a prima facie case despite such parity, a replacement within the same protected class cuts strongly against any inference of discrimination."); *Hall v. Giant Food, Inc.*, 175 F.3d 1074, 1080 (D.C. Cir. 1999) (noting that three-quarters of a plaintiff's fellow

16

employees were older than him, which "tend[ed] to refute any implication" of age
discrimination).

Fifth, plaintiff claims that public records "show the next two hires into [the Office]
occurred in 2018 and 2019," and both new hires, "according to public data, are White Males
under the age of 40." Pl.'s Opp'n at 15. To support this assertion, however, plaintiff provides a
"Federal Employee Profile" of "JY" and "AMB" that lacks any reference to their age, race, or
sex, *see* Pl.'s Opp'n, Ex. F, JY and AMB Federal Employee Profile, at 1-3, ECF No. 44-6,
leaving this assertion about their race and age reliant only on her say-so. Assuming plaintiff's
representations are accurate, the fact that the Office *hired* two white men under the age of 40 for
jobs as program analysts in 2018 and 2019 is not enough, without more, to give rise to an
inference that plaintiff's *promotion* was withheld in 2018 on the basis of race, sex, or age. *See
Pollard v. Quest Diagnostics*, 610 F. Supp. 3d 1, 22 (D.D.C. 2009) (noting that plaintiff was
"wrong as a legal matter" when she argued that two candidates outside of her protected class
being granted second-level interviews "without more" was "sufficient to raise an inference of
discrimination").

Sixth, to support her belief that her promotion was withheld on January 6, 2018, because
of her disability, plaintiff claims that Chapman "mocked" her condition on September 20, 2017,
and that he, in an email on December 21, 2017, "identified her illness as impacting his work
planning" and implied that plaintiff was not "able to perform assigned work" because of her
disability. Pl.'s Opp'n at 53-54. The record does not support plaintiff's characterization of
Chapman's behavior. Regarding the incident on September 20, 2017, plaintiff informed
Chapman she would not attend the Office's annual breakfast because she believed she might be
allergic to the soy in eggs and, since soy-free eggs "cost about $50 for 4 dozen," "she knew no

17

one would do that for her condition," to which Chapman responded, "who has that?"  Def.'s

Reply, Ex. 8, Excerpt from Pl.'s EEO Complaint, at 2, ECF No. 46-1.  Construing Chapman's

question as critical of plaintiff's condition, as opposed to referring plausibly to either the cost or

source of soy-free eggs, is insufficient to give rise to an inference of disability discrimination

because plaintiff has not "establishe[ed] a 'nexus between the stray remark and'" her promotion

being withheld four months later.  *Bajaj v. Turner*, --- F. Supp. 3d ---, No. 21-cv-1149 (RDM),

2025 WL 1148413, at *19 (D.D.C. Apr. 18, 2025) (quoting *Ajisefinni v. KPMG LLP*, 17 F. Supp.

3d 28, 44-45 (D.D.C. 2014)); *see Tarquinii v. Del Toro*, No. 21-cv-1567 (RC), 2024 WL

4298857, at *10 (D.D.C. Sept. 26, 2024) (holding that "sexually and religiously inappropriate

remarks" were insufficient to support an inference of discrimination because they were isolated

and unconnected to the allegedly discriminatory act); *Simms v. U.S. Gov't Printing Off.*, 87 F.

Supp. 2d 7, 9 n.2 (D.D.C. 2000) ("[S]tray remarks, even those made by a supervisor, are

insufficient to create a triable issue of discrimination where . . . they are unrelated to an

employment decision involving the plaintiff." (internal quotation marks omitted)).

        Similarly, the December 21, 2017, email shows Chapman's understanding rather than

critique of plaintiff's disability.  That morning Chapman emailed plaintiff asking her to complete

work assignments before she left for the day, and she responded that she was going to try and

complete them but her "illness" "may require [her] to leave the premises with or without

assistance despite [her] best efforts to prevent that from occurring."  Pl.'s Opp'n, Ex. T, Email

Correspondence Between Pl. & Chapman, at 2-3, ECF No. 44-20.  Chapman replied

> If you have a medical issue that requires you to take sick leave, by all means, do so.  I
> would/will certainly approve your leave request.  If you are unable to complete the task
> of preparing and sending the emails because of a medical issue, don't worry about it, just
> send me the leave request and take care of yourself.  **Do not put yourself at any risk of
> illness for the sake of completing the assignment.**  However, if you are unable to do
> work, you must take sick leave.

I wish that I had known there was a medical issue earlier so that I could plan work accordingly.  What this condition is and how it impacts your ability to carry out the tasks assigned are better discussed in person when we're both back in the office.

I hope you feel better.

*Id.* at 4.  (emphasis in original).  Plaintiff cherry-picks parts of the last paragraph to support interpreting this email as Chapman identifying her disability as "impacting his work planning" and "[p]laintiff not being able to perform assigned work (at all was the implication)."  Pl.'s Opp'n at 54.  Read in context, plaintiff's interpretation is not reasonable as supporting an inference that her promotion was withheld because of her disability, and while at summary judgment "all justifiable inferences" must be drawn in favor of plaintiff, *Anderson*, 477 U.S. at 255, "[a court] will not step past inference into imagination," *Jeffries v. Barr*, 965 F.3d 843, 865 (D.C. Cir. 2020).

Finally, plaintiff argues negative treatment of women of color who suffered from disabilities at the Office during her employment provides an inference of discrimination for the denial of her promotion.  Pl.'s Opp'n at 13-15, 39, 55.  To be sure, a plaintiff can "cast doubt on an employer's asserted reason" by pointing to "the employer's general treatment of" employees who share plaintiff's protected characteristics.  *Brady*, 520 F.3d at 495 n.3; *see also Guillen-Perez v. District of Columbia*, 415 F. Supp. 3d 50, 62 (D.D.C. 2019) (finding that plaintiff provided sufficient evidence to support her discrimination claim by showing her employer's "preferential treatment of non-Hispanic employees").  No evidence in the record, though, supports her claim.  She argues that (1) under Chapman's tenure "as the sole supervisor" for her unit at the Office, "Black Females who comprised 60% of PRB's recent new hires from 2015 to 2017 became 100% of PRB's separations,"  Pl.'s Opp'n at 14; (2)  a "linked chain of events spanning the 2016 to 2018 timeframe" existed regarding two "Black Female" colleagues, AR and CC, who "filed grievance and/or EEO complaints against the agency for their treatment," *id.*

19

at 14-15; and (3) Chapman had "a record of negatively perceiving and treating persons with disabilities who are black females," *id.* at 55, including AR and CC.  All arguments are unadorned with citation to the record, let alone any deposition testimony of AR or CC or any affidavit sworn to by AR or CC, or otherwise supported by evidence that race, sex, or disability discrimination played any role in AR or CC's employment with, or separation from, the Office, including any alleged grievances or complaints.  *See id.* at 14-15, 39, 55.[6]  Allegations and arguments untethered to and unsupported by evidence in the record are not sufficient to carry plaintiff's burden at summary judgment.

***

"[A] career-ladder promotion is contingent on the employee's ability to perform at the next higher grade."  *Bolden*, 602 F. Supp. 2d at 138 (quoting *Nails v. England*, 311 F. Supp. 3d 116, 122 (D.D.C. 2004)); *see* Chapman's Aff. at 2 ("In order to receive a career ladder promotion, an employee must demonstrate the ability to perform at the grade to which they would be promoted.").  Looking at the entire record, plaintiff has not pointed to evidence sufficient to create a genuine dispute of material fact that defendant's legitimate reason for not promoting her because she was unable to perform at the GS-11 grade level was pretextual.  *See Walker*, 798 F.3d at 1093 ("The evidence on which [plaintiff] relies in this case could not support a finding that the employer's proffered reasons were untrue, and thus, *a fortiori,* could not support an inference that her employer was hiding a prohibited motive.").  Instead, the evidence shows she was a satisfactory GS-9 grade level employee at the Office with a history of achieving higher GS grade levels in prior employment and she experienced a stray remark about her disability four months before not receiving a promotion.  In other words, no evidence, other than

---

[6]     Plaintiff cites to an exhibit, but the exhibit simply shows that CC, AR, and plaintiff, are considered "former employees" at the Office.  *See* Pl.'s Opp'n, Ex. E, Plaintiff, CC, and AR Federal Employee Profiles, ECF No. 44-5.

20

plaintiff's personal opinion, shows that plaintiff could in fact perform at a GS-11 grade level or that individuals who were unable to perform at the GS-11 grade level were nevertheless promoted to that grade level.

Even if the record did show that the proffered reason for her non-promotion was pretextual, "[t]he evidence of record must be such that a reasonable jury could not only disbelieve the employer's reasons, but conclude that the real reason the employer took a challenged action was a prohibited one." *Id.*; *see also Oviedo*, 948 F.3d at 399 ("[Plaintiff] failed to present evidence from which a reasonable jury could conclude that [defendant's] non-discriminatory and non-retaliatory rationale for denying [his] promotion in Fall 2013 was pretext for discrimination or retaliation."); *Chambers v. Burwell*, 824 F.3d 141, 144 (D.C. Cir. 2016) ("[Plaintiff] did not produce evidence from which a reasonable juror could find that she was denied the promotion because of her race or disability."). Plaintiff has not come forth with evidence suggesting she was denied promotion *because of* her sex, age, race, or disability, as opposed to something nondiscriminatory, and, thus, defendant's motion for summary judgment as to Counts 1, 4, and 5 is granted. *See Chambers*, 824 F.3d at 145 ("We nevertheless conclude that [plaintiff's] claim suffers from a fatal defect: [she] did not show that she was denied her promotion because of her race or disability. This showing is an essential element of her employment discrimination claim. Evidence that is 'merely colorable' or 'not significantly probative' is insufficient to establish this element of her claim at summary judgment." (internal citation omitted)).

### B.     Plaintiff's Retaliation Claim (Count 2) Fails.

Under Title VII, ADEA, and the Rehabilitation Act, it is unlawful for an employer to discriminate or retaliate against any of its employees because an individual has engaged in protected activity, such as opposing any practice the statutes make unlawful or making a charge,

testifying, assisting, or participating in any manner in an investigation, proceeding, or litigation under the statutes. *See* 29 U.S.C. § 623(d) (ADEA); 42 U.S.C. § 2000e-3(a) (Title VII); 42 U.S.C. § 12203(a), *id.* § 12203(a)(ii), *id.* § 12203(b) (Rehabilitation Act); *see also Coleman*, 867 F.3d at 206 ("Title VII and the ADEA both prohibit retaliation against a person who files a claim under or otherwise opposes practices made unlawful by those statutes." (citing 42 U.S.C. § 2000e–3(a); 29 U.S.C. § 623(d)); *Solomon v. Vilsack*, 763 F.3d 1, 5 (D.C. Cir. 2014) ("The Rehabilitation Act . . . forbids retaliation against or coercion of individuals who seek to vindicate the rights guaranteed by the statute."). Like the discrimination claims discussed above, "[a] plaintiff claiming unlawful retaliation must prove her case under the burden-shifting framework established by *McDonnell Douglas*." *Broderick v. Donaldson*, 437 F.3d 1226, 1231 (D.C. Cir. 2006). "Under that framework, a plaintiff must first establish a prima facie case of retaliation by showing (1) that [s]he engaged in statutorily protected activity; (2) that [s]he suffered a materially adverse action by h[er] employer; and (3) that a causal link connects the two." *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009). At summary judgment, if an employer offers a legitimate non-retaliatory explanation for the materially adverse action, "the district court should . . . proceed[] to the ultimate issue of retaliation *vel non* . . . .[, and] the only question is whether the employee's evidence creates a material dispute on the ultimate issue of retaliation." *Id.* at 678.

Here, a liberal reading of plaintiff's amended complaint and opposition brief provides that she engaged in the following protected activity: (1) providing witness testimony in her colleague's EEOC proceeding against the Office, of which testimony Clark became aware on November 6, 2017; (2) meeting with Christopher on November 7, 2017, to discuss Chapman's "angry, hostile, and antagonistic" behavior in a meeting she had with him on November 6, 2017,

22

where he confronted her regarding a work assignment; and (3) sending an email on February 22, 2018, demanding an update on the status of her promotion by close of business. Pl.'s Opp'n at 14-17. Plaintiff argues that because of the first two reported activities her promotion was withheld, *id.* at 17-20, and as to the third activity, she was subject to "severe intimidation" in the February 22, 2018, meeting she had with Christopher and Chapman after she sent her demand email, *id.* at 21, 30-33. Defendant argues plaintiff has failed to put forth evidence that her promotion was withheld for non-retaliatory reasons. Def.'s Reply at 1-7. Based on the evidence, as reviewed below, defendant's motion on plaintiff's retaliation claim is granted.

### 1.    *Failure-to-Promote*

As discussed above, defendant has submitted a legitimate non-retaliatory reason for why plaintiff was not promoted: she failed to demonstrate that she could perform at the GS-11 grade level. Chapman's EEOC Hrg. Tr. at 92-93; Chapman's Aff. at 2. Therefore, the "'presumptions and burdens' from the *McDonnell Douglas* framework 'disappear[]' and the 'sole remaining issue' is whether the adverse action was retaliation or not." *Mera v. Bondi*, No. 24-5125, 2025 WL 1418164, at *3 (D.C. Cir. May 16, 2025) (quoting *Kersey v. Wash. Metro. Area Transit Auth.*, 586 F.3d 13, 16-17 (D.C. Cir. 2019). Plaintiff submits that "temporal proximity of eight weeks" between the Office's awareness on November 6, 2017, that plaintiff served as a witness in her coworker's EEOC hearing a month earlier, as well as her November 7, 2017, meeting with Christopher regarding Chapman's behavior and the withholding of her promotion on January 9, 2018, presents a triable issue of fact to preclude summary judgment. Pl.'s Opp'n at 19-20. Plaintiff is mistaken. As the D.C. Circuit has reiterated, "[p]roximity may establish a *prima facie* case of retaliation, but to survive summary judgment in the face of an employer's evidence of nonretaliatory grounds," *Mera*, 2025 WL 141864, at *3, "'positive evidence beyond mere

23

proximity' is required 'to create a genuine issue of material fact concerning whether the motive for an adverse employment action was . . . retaliation,'" *Minter v. District of Columbia*, 809 F.3d 66, 71-72 (D.C. Cir. 2015) (brackets omitted) (quoting *Solomon*, 763 F.3d at 16). Here, plaintiff has provided no argument or evidence other than proximity to dispute defendant's legitimate reason for withholding her promotion, which turned on her inability to perform at the GS-11 grade level as Chapman testified. *See Jeffries*, 965 F.3d at 861 ("[E]ven assuming that [plaintiff's] evidence of temporal proximity is sufficient to make out a *prima facie* case of retaliation, he has failed to come forward with 'positive evidence beyond mere proximity,' which 'is required to defeat the presumption' that [defendant's] proffered explanation for his nonselection is genuine." (quoting *Woodruff v. Peters*, 482 F.3d 521, 530 (D.C. Cir. 2007)).

Further, the record evidence is sparse to support even plaintiff's *prima facie* case. While a court at summary judgment should not evaluate whether plaintiff has made a *prima facie* case for retaliation if an employer offers a legitimate non-retaliatory reason for the materially adverse action, "three relevant categories of evidence—prima facie, pretext, and any other—may be examined to determine whether they 'either separately or in combination' provide sufficient evidence for a reasonable jury to infer retaliation." *Jones*, 557 F.3d at 678-79 (quoting *Waterhouse v. District of Columbia*, 298 F.3d 989, 996 (D.C. Cir. 2002)). Particularly relevant, no evidence shows Chapman or Christopher knew of plaintiff's protected activity prior to the date she became eligible for her promotion in January of 2018. With respect to her EEOC testimony, Clark, the person who received the report identifying plaintiff as the witness, did not share information regarding her testimony with Christopher, Chapman, or anyone else. Clark Decl. ¶¶ 6-7. Plaintiff does not point to evidence in her exhibits or affidavit, nor makes any argument in opposition supported by evidence, that undermines Clark's declaration. *See*

24

*generally* Pl.'s Opp'n; *id.*, Exhibits A-U, ECF Nos. 44-1 to 44-21; Pl.'s Decl; Pl.'s Statement of

Material Facts in Dispute.

Moreover, the record regarding the November 7, 2017, meeting between Christopher and

plaintiff lacks evidence that plaintiff in fact communicated "unlawful discrimination," a

"threshold requirement" under the "opposition clause" of the statutes. *Bajaj*, 2025 WL 1148413,

at *16 (citation omitted). No account of the November 7, 2017, meeting reveals that plaintiff

complained that Chapman's behavior toward her on November 6, 2017, was because of her sex,

race, age, or disability. To the contrary, in her opposition brief, plaintiff quotes from testimony

heard before the EEOC from Christopher stating that "Plaintiff gestured and said she could not

get the words out about how . . . Chapman had been mistreating her," Pl.'s Opp'n at 22, and she

concedes that at the meeting she "was unable to speak about how . . . Chapman had acted

towards her," Am. Compl. ¶ 63. "While no 'magic words' are required," to qualify as a

complaint covered under the opposition clause of antidiscrimination statutes, the communication

"must in some way allege unlawful discrimination," *McGrath v. Clinton*, 666 F.3d 1377, 1380

(D.C. Cir. 2012). Here, there is no genuine dispute of material fact that plaintiff did not

complain or communicate to Christopher that Chapman's behavior was *discriminatory* but only

"hostile, angry, and antagonistic," Pl.'s Decl. ¶ 8. *See Bajaj*, 2025 WL 1148413, at *17 ("First

and foremost, [plaintiff] does not object to any practice made unlawful under Title VII, the

ADEA, or the Rehabilitation Act [in her email]. Her email includes no mention of her sex,

national origin, religion, age, or disability, nor does she suggest that [her supervisor] was

'discriminating against her' or was 'being hostile towards her' based on any protected status."

(brackets omitted)). Even though plaintiff did state in the meeting that "she would now be

seeking representation for her employment situation," Pl.'s Opp'n at 21; Am. Compl. ¶ 63, she

has not provided any detail undergirding what about her "employment situation" was unlawful, and "general[] and generic[]" "complaint[s]" that do "not refer to harassment or discrimination based on race or any other protected category," are not covered by the ADEA, Title VII, or the Rehabilitation Act, *Lemmons v. Georgetown Univ. Hosp.*, 431 F. Supp. 2d 76, 92 (D.D.C. 2006) (brackets omitted).[7]

Accordingly, a reasonable jury reviewing the evidence could not find that plaintiff was retaliated against for engaging in protected activity when she was not promoted from the GS-9 grade level. As such, to the extent that plaintiff's retaliation claim in Count 2 is premised on the withholding of her promotion, defendant's motion for summary judgment is granted.

### 2. *Severe Intimidation*

Next, plaintiff argues she was subject to severe intimidation on February 22, 2018, when Christopher summoned her and Chapman into his office after she sent an email demanding a response "by close of business" "*today*" explaining why she had not been promoted and asking

---

[7]    Construing plaintiff's opposition and amended compliant liberally, she also argues that she was retaliated against when Christopher did not initiate an internal investigation of Chapman after the November 7, 2017, meeting. Pl.'s Opp'n at 27-30, 40-43. Defendant claims that plaintiff has failed to make out a *prima facie* case as to this claim based on a separate alleged materially adverse action. Def.'s Mem. at 9; Def.'s Reply at 8-9. Defendant's argument is well taken. Specifically, as discussed, no evidence shows that, in her complaint to Christopher, she expressed her belief about Chapman subjecting her to discrimination on any protected basis or expressed opposition to any discriminatory practice. *See supra* Part III.B.1. "Because [plaintiff] points to no legitimate protected activity . . ., she cannot survive summary judgment on this basis." *Morris v. McCarthy*, 825 F.3d 658, 673-74 (D.C. Cir. 2016). *See also Bajaj*, 2025 WL 1148413, at *18 (granting defendant summary judgment because plaintiff's email, while mentioning the word "discrimination," did not "identif[y] the allegedly discriminatory practice, nor [did] it identify the allegedly discriminatory classification or status"); *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 204-05 (D.D.C. 2012) (holding that plaintiff did not sufficiently demonstrate protected activity where she "complained to human resources" that her supervisor had abused her and screamed at her); *Beyene v. Hilton Hotels Corp.*, 815 F. Supp. 2d 235, 247 (D.D.C. 2011) (granting summary judgment to the defendant on retaliation claim because the plaintiff "put forward no evidence that his complaint to . . . management alleged unlawful discrimination based on his membership in a protected class"); *cf. Broderick*, 437 F.3d at 1232 (noting that a written complaint to supervisors was likely unprotected activity because the plaintiff complained of mistreatment but failed to provide that she was being discriminated or retaliated against);. Further, no evidence supports causation, *i.e.*, that any failure on Christopher's part to investigate Chapman for his alleged behavior in the prior day's meeting—which, standing alone, is not a material adverse action, *see infra* Part III.B.2 n.7—was "because [s]he participated in protected activity," *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013)). In short, no evidence presented about plaintiff's November 7, 2017, meeting with Chapman supports a finding that this meeting constituted protected activity.

that his response be in writing because she did not feel safe having a closed-door, in-person meeting with management officials.  Status Email at 9 (emphasis in original).  According to plaintiff, at the meeting, Christopher "was mad," "started in on [her]," "was stomping his foot," and told her she "was not entitled to a promotion," "he didn't like her demeanor and the tone" of her email, and she would get a response to her inquiry but not on her timeline.  Pl.'s Hrg. Tr. at 63-66; 2d Email from Pl. to Christopher & Chapman at 3.  Defendant argues plaintiff's claim that she suffered a materially adverse action at this meeting is unsupported to satisfy her *prima facie* case.  Def.'s Mem. at 9-11; *see Durant v. D.C. Gov't*, 875 F.3d 685, 697 (D.C. Cir. 2017) (recognizing that at summary judgment "[o]nly if the plaintiff makes an initial prima facie showing does the burden then shift to the defendant to articulate a legitimate, nonretaliatory reason for its action," and if it does so, the "burden-shifting framework disappears" and the question becomes "whether a reasonable jury could infer . . . retaliation from all the evidence" (second and third quotes quoting *Jones*, 557 F.3d at 677)).

Assuming plaintiff's email demand for an update about her promotion by the end of the day constituted protected activity, despite its omission of *any* mention of race, sex, age, disability, discrimination, retaliation, or EEO activity, *see* Status Email, no evidence in the record could lead a reasonable jury to conclude that Christopher's actions during the subsequent meeting were retaliatory because she has failed to "establish that . . . she suffered . . . a materially adverse action," *Baloch*, 550 F.3d at 1198.  In the retaliation context, a materially adverse action is one "that would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  The inquiry is "objective" to separate "significant from trivial harms."  *Chambers*, 35 F.4th at 876.  The D.C. Circuit has found, based on the "cumulative effect" of "individual acts,"

27

*Baird v. Gotbaum* ("*Baird II*"), 792 F.3d 166, 171 (D.C. Cir. 2015), that "'a hostile work environment can amount to retaliation under Title VII' if the conduct meets" the hostile work environment standard, which requires a showing that the plaintiff's "employer subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment'" based on the all the circumstances, *Baird v. Gotbaum* ("*Baird I*"), 662 F.3d 1246, 1250 (D.C. Cir. 2011) (first quoting *Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006); and then quoting *Baloch*, 550 F.3d at 1201).[8]

Evidence of Christopher's behavior in a single meeting falls well below what a reasonable factfinder would consider as a materially adverse action to support her retaliation claim. Evidence depicts one instance, in plaintiff's telling, of Christopher being angry and stomping his foot. Pl.'s Hrg. Tr. at 63-66. Moreover, in an email to Christopher and Chapman after the meeting, plaintiff wrote "I sincerely appreciate the content and manner of your response on behalf of Mr. Chapman and yourself as . . . management, and on behalf of the Office of Government Ethics," 2d Email from Pl. to Christopher and Chapman, and in an email to a colleague sent a few hours after the meeting, plaintiff wrote "I'm not accusing anyone of anything," Pl.'s Opp'n, Ex. G, Email from Pl. to Cheryl L. Kane-Piasecki, at 1, ECF No. 44-7. Additionally, after the meeting, Christopher emailed plaintiff and told her that to the extent she felt unsafe in closed-door meetings with management, the concerns likely fell "under the auspices of a hostile work environment" and that she should "contact [the Office's] EEO

---

[8]    While plaintiff did not present the issue as such, construed liberally, her claim is best understood as arguing that she was retaliated against for her email by being subject to a hostile work environment in the February 22, 2018, meeting.

Counselor in order to discuss [her] concerns and/or file a complaint" and provided the individual's contact information. *Id.*, Email from Chrisopher to Pl., at 5, ECF No. 44-7.

While the *subjective* aspect of plaintiff's claim is acknowledged, *see* Pl.'s Opp'n at 33 ("Plaintiff became so afraid, physically sick and mentally distraught that she was under two medical doctors' care within two days unable to return to work."), the D.C. Circuit has held that a supervisor's far more serious behavior did not constitute a materially adverse action to establish a retaliation claim because it would not dissuade a "reasonable person" from engaging in protected activity. *Baloch*, 550 F.3d at 1198-1200. In *Baloch*, the D.C. Circuit evaluated evidence that the plaintiff's supervisor engaged in numerous instances of "profanity-laden yelling" to support the alleged "[materially] adverse actions" he experienced. *Id.* at 1199. While "disproportionate," the Court held his supervisors' actions as not materially adverse because "[t]he Supreme Court . . . has emphasized that sporadic verbal altercations or disagreements do not qualify as adverse actions for purposes of retaliation claims." *Id.* (citing *Burlington*, 548 U.S. at 68). The same is true here. An analysis of all the circumstances reveals a meeting between an employee and her supervisors that was in response to the employee's demand email for information, was held in private, thereby minimizing "public humiliation or loss of reputation," *Baird I*, 662 F.3d at 1249, and where the supervisor did not use profanity or abusive language, raise his voice, threaten or intimidate plaintiff, or criticize any protected activity in which plaintiff may have engaged. To the contrary, Christopher took her accusation that she felt unsafe "seriously," Email from Chrisopher to Pl., at 5, prompting him to encourage plaintiff to engage in protected activity, actions that weaken an inference that the behavior would "dissuade[] a reasonable worker from making or supporting a charge of discrimination," *Burlington*, 548 U.S. at 68. At bottom, Christopher's conduct was not "sever[e]" enough "to

constitute material adversity for purposes of a retaliation claim." *Baloch*, 550 F.3d at 1199; *see also Baird II*, 792 F.3d at 171 (noting that "occasional name-calling, rude emails, lost tempers and workplace disagreements" are "the kind of conduct courts frequently deem uncognizable under" antidiscrimination statutes); *Baird I*, 662 F.3d 1246, 1249 (D.C. Cir. 2011) (noting that episodes "akin to the sort of 'public humiliation or loss of reputation'" are "consistently classified as falling below the requirements for an adverse employment action" to sustain a retaliation claim); *Clipper v. Billington*, 414 F. Supp. 2d 16, 24 (D.D.C. 20006) (noting that even if supervisor in fact "'banged his fist on a table," it did not create hostile work environment).

In sum, "not everything that makes an employee unhappy is an actionable adverse action," *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001), and here, no evidence has been presented to permit a reasonable jury to conclude that Christopher's behavior in the meeting subjected plaintiff to a hostile work environment in retaliation for protected activity. Thus, summary judgment is warranted on plaintiff's retaliation claim in Count 2 to the extent this claim relies on evidence from the February 22, 2018, meeting.[9]

---

[9]    Interpreting liberally plaintiff's amended complaint and briefing, she seemingly also believes that she was retaliated against for her protected activity in providing EEOC testimony for a colleague when, on November 6, 2017, Chapman called her into his office about a work assignment. Pl.'s Opp'n at 17, 20, 23-26. Assuming Chapman even knew of plaintiff's EEOC testimony, *see supra* Part III.B.1, defendant argues the meeting does not amount to a materially adverse action to sustain plaintiff's *prima facie* case. Def.'s Mem. at 8-9; Def.'s Reply at 8. Defendant is correct. "'An employer [is] entitled to discuss and even critique employee about legitimate job performance problems without being subjected to suit,' because" the anti-discrimination statues' "retaliation provision[s] '[were] not intended to immunize insubordinate, disruptive, or nonproductive behavior at work.'" *Rattigan v. Holder*, 604 F. Supp. 2d 33, 49 (D.D.C. 2009) (internal citation omitted) (first quoting *Morrison v. Potter*, 363 F. Supp. 2d 586, 591 (S.D.N.Y. 2005); and then quoting *Armstrong v. Index J. Co.*, 647 F.2d 441, 448 (4th Cir. 1981)). Plaintiff acknowledges that she had not yet sought Chapman's approval to post the assignment on the agency's webpage by the time he called her into his office, Pl.'s Resp. SUMF ¶ 10, rendering his behavior— even if "angry, hostile, and antagonistic," Pl.'s Dec. ¶ 8, which is unsupported with any facts describing what actually occurred in the meeting—at worst, slightly disproportionate but not materially adverse, since this "would not have dissuaded a reasonable worker from complaining of discrimination," *Rattigan*, 604 F. Supp. 2d at 49. *See Baloch*, 550 F.3d at 1199 (affirming summary judgment for employer because a supervisor's "disproportionate" "profanity-laden yelling" did not amount to a materially adverse action); *Taylor v. Mills*, 892 F. Supp. 2d 124, 147 (D.D.C. 2012) ("The criticism of the plaintiff's job performance itself, delivered by [her supervisors] in the February 4, 2009, conference call, . . . does not qualify as an adverse employment action."); *Blackmon-Malloy v. U.S. Capitol Police Bd.*, No. 01-cv-2221 (EGS), 2024 WL 4298853, at *14 (D.D.C. Sep. 26, 2024) (noting that "oral reprimands are often the kind of 'sporadic verbal altercations or disagreements'" that do not qualify as adverse actions for

**C.    Plaintiff's Hostile Work Environment Claim (Count 3) Fails.**

Plaintiff next contends she was subject to a hostile work environment on the basis of sex and race in violation of Title VII.  Pl.'s Opp'n at 35-44.  To support her claim, she argues (1) "[u]nder . . . Chapman's supervision" she, and her former colleague AR, "found themselves subject to arbitrary deadlines, urgent demands for work assignments, and excess pressure . . . to meet his unclear and largely poorly communicated expectations,"  Pl.'s Opp'n at 36; (2) Chapman believed that plaintiff did not "work fast enough," or did "not work," *id.* at 37; (3) and one coworker called CC, a "[s]tupid [w]oman," in plaintiff's presence on some unspecified date, and, relatedly, CC was portrayed in the Office in a negative light, *id.* at 37-38.  Defendant responds that plaintiff's claim falls "fall[s] well below" the hostile work environment standard. Def.'s Mem. at 21.  It does, and summary judgment must be entered for defendant on Count 3.

To succeed on a claim that she was subject to a hostile work environment, plaintiff "faces a high hurdle." *Fields v. Vilsack*, 207 F. Supp. 3d 80, 92 (D.D.C. 2016).  As already discussed, she "must show that h[er] employer subjected h[er] to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'" *Baloch*, 550 F.3d at 1201 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  The workplace must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).  "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch*, 550

---

retaliation (quoting *Baloch*, 550 F.3d at 1199)).  Thus, there is no genuine dispute of material fact that November 6, 2017, meeting with Chapman was not a materially adverse action.

F.3d at 1201.  Further, "the conduct at issue [cannot be] merely tinged with offensive . . .

connotations, but actually constitute[] discrimina[tion] . . . because of" the employee's protected

status.  *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (internal quotation mark

omitted) (1998).

     While plaintiff may have found her workplace subjectively offensive, *see* Pl.'s Decl. ¶ 6,

the "[c]onduct . . . is not severe or pervasive enough to create an objectively hostile or abusive

work environment—an environment that a reasonable person would find hostile or abusive,"

*Harris*, 510 U.S. at 21.  First, plaintiff's claims that she and AR were subject to arbitrary

deadlines, urgent demands, excess pressure, and Chapman's alleged critiques of plaintiff are not

supported by facts in the record, testimony or affidavits from AR, or plaintiff's affidavit.  *See*

Def.'s Mot., Exhibits 1-7, ECF No. 35-2; Pl.'s Opp'n, Exhibits A-U, ECF Nos. 44-1 to 44-21;

Pl.'s Decl.; Def.'s Reply, Exhibits 8-11, ECF Nos. 46-1 to 46-7.  At summary judgment, plaintiff

must "present affirmative evidence . . . to defeat a properly supported motion for summary

judgment."  *Durant*, 875 F.3d at 696 (quoting *Anderson*, 477 U.S. at 257).  Plaintiff has not done

so.  *Cf. id.* at 700 (affirming grant of summary judgment where plaintiff failed to support his

hostile work environment claim with evidence and only supported with conclusory statements).

     Even crediting plaintiff's argument, her complaints reflect "the 'ordinary tribulations of

the workplace,' a series of 'petty insults, vindictive behavior, and angry recriminations' that are

not actionable under Title VII."  *Brooks v. Grundmann*, 748 F.3d 1273, 1277-78 (D.C. Cir 2014)

(internal citation omitted) (first quoting *Faragher*, 524 U.S. at 788; and then quoting *Bhatti v.

Trs. of Bos. Univ.*, 659 F.3d 64, 74 (1st Cir. 2011)).  For example, in *Magowan v. Lowery*, the

plaintiff claimed she was subject to a hostile work environment because, among other things, her

supervisor would assign emergency assignments at the end of the day that had to be completed

immediately, assigned "undoable" workloads and deadlines, and made verbal "put-downs."  166 F. Supp. 3d 39, 51 (D.D.C. 2016).  The court held that plaintiff's claims consisted of the very "conduct that courts frequently deem uncognizable under Title VII."  *Id.* (quoting *Baird II*, 792 F.3d at 171).  Indeed, a chorus of courts routinely reject claims that work-related actions by supervisors constitute a hostile work environment without showing that they are objectively based on severe and pervasive discriminatory intimidation or treatment.  *See Wade v. District of Columbia*, 780 F. Supp. 2d 1, 19 (D.D.C. 2011) (collecting cases involving courts rejecting similar claims plaintiff makes here as constituting a hostile work environment because they "were not objectively offensive"); *see Jimenez v. McAleenan*, 395 F. Supp. 3d 22, 36 (D.D.C. 2019) (holding that alleged deadlines that were "impossible to meet," even assumed true, was insufficient to establish a hostile work environment); *Graham v. Holder*, 657 F. Supp. 2d 210, 217 (D.D.C. 2009) ("Being subjected to 'scrupulous monitoring' does not support a claim for hostile work environment." (quoting *Runkle v. Gonzales*, 391 F. Supp. 2d 210, 226 (D.D.C. 2005)).

Moreover, to the extent that plaintiff relies on "conduct directed at others," such as the treatment of CC, which is credited despite the lack of supporting evidence in the record, *see* Def.'s Mot., Exhibits 1-7, ECF No. 35-2; Pl.'s Opp'n, Exhibits A-U, ECF Nos. 44-1 to 44-21; Pl.'s Decl.; Def.'s Reply, Exhibits 8-11, ECF Nos. 46-1 to 46-7, the conduct "is less indicative of a hostile work environment," when not directly experienced by plaintiff.  *Lester v. Natsios*, 290 F. Supp. 2d 11, 31 (D.D.C. 2003); *Gleason v. Mesirow Fin. Inc.*, 118 F. 3d 1134, 144 (7th Cir. 1997) ("[T]he impact of 'second-hand harassment' is obviously not as great as the impact of harassment directed at the plaintiff.").  To be sure, "[i]ncidents of workplace [discrimination] that did not directly involve the plaintiff may be relevant to whether there is a hostile work

environment." *Dudley v. Wash. Metro. Area Transit Auth.*, 924 F. Supp. 2d 141, 166-67 (D.D.C.

2013).  For example, in a case involving allegations of a racially hostile work environment, "[i]f

. . . supervisors frequently used highly offensive racial slurs in reference to other . . .

employees—even when [plaintiff] was not around—this could be relevant."  *Id.* at 167.  Here,

however, her coworker's referral to CC as "stupid," describing CC as "yelling all the time and

. . . never do[ing] any work she was assigned," and that in a meeting, on February 8, 2018,

"everyone in the room started laughing and snickering" when an assignment CC completed was

mentioned, *see* Pl.'s Opp'n at 37-38, are insufficient to have her claim heard by a jury because

"[w]hether the product of workplace mobbing or simply office politics, this type of . . . gossip

[about a coworker] may be unprofessional and unpleasant to hear, but it lacks the severity or

pervasiveness necessary to affect the terms or conditions of employment and to give rise to an

environment that is subjectively and objectively hostile," *Clemmons v. Acad. for Educ. Dev.*, 107

F. Supp. 3d 100, 117 (D.D.C. 2015).[10]

***

The "standards for judging hostility 'are sufficiently demanding to ensure that Title VII

does not become a 'general civility code.'"  *Faragher*, 524 U.S. at 788 (quoting *Harris*, 510 U.S.

at 80).  "Properly applied, they . . . filter out complaints attacking 'the ordinary tribulations of the

workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional

teasing," *id.* (citation omitted), as well as "name-calling, rude emails, lost tempers[,] . . .

workplace disagreements, . . . a series of petty insults, vindictive behavior, and angry

---

[10]    Plaintiff also cites the meetings she relied on to support her retaliation claim, as discussed *supra* Part III.B.,
to show she has satisfied the "subjective component" of the test, *see* Pl.'s Opp'n at 38-39.  In addition to the fact that
"courts in this district are generally skeptical of plaintiffs 'bootstrap[ping] their alleged discrete acts of retaliation
into a broader hostile work environment claim," *Tyes-Williams v. Whitaker*, 361 F. Supp. 3d 1, 9 (D.D.C. 2019), for
the same reasons stated above, the conduct in those meetings does not rise to the level of an *objectively* hostile work
environment.  *See supra* Part III.B.

34

recriminations," *Baird II*, 792 F.3d at 171 (cleaned up).  In other words, the conduct Title VII

forbids "must be extreme."  *Faragher*, 524 U.S. at 788.  Construing the evidence, and all

reasonable inferences in her favor, plaintiff has failed to create a genuine dispute of material fact

that she was subject to a hostile work environment. Accordingly, defendant's motion for

summary judgment as to her hostile work environment claim in Count 3 is granted.[11]

## IV.    CONCLUSION

Plaintiff has ably pursued her alleged discrimination claims for over seven years, through

an administrative process, federal court discovery, attempted mediation, and dispositive motion

briefing.  After discovery, and fulsome consideration of the evidence, however, there is no

genuine dispute of material fact regarding any of her claims.  Thus, for the reasons stated above,

defendant's motion for summary judgment is granted in full.

Date: July 21, 2025

**BERYL A. HOWELL**
United States District Judge

---

[11]    In Count 3, plaintiff also claimed she suffered a constructive discharge in violation of Title VII.  Am. Compl. ¶¶ 58-68; Pl.'s Opp'n at 45-47.  "Such a claim requires proof that 'an employer discriminate[d] against an employee to the point such that his working conditions bec[a]me so intolerable that a reasonable person in the employee's position would have felt compelled to resign.'"  *Ames v. Wolf*, 820 F. App'x 1, 3 (D.C. Cir. 2020) (quoting *Green v. Brennan*, 578 U.S. 547, 555 (2016)).  To make out a constructive discharge claim, a plaintiff must show both "discrimination" and "aggravating factors," which "are those aspects of a discriminatory work environment that, by making the workplace so disagreeable, prevent the reasonable employee from seeking remediation on the job."  *Veitch v. England*, 471 F.3d 124, 130 (D.C. Cir. 2006) (quoting *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1558 (D.C. Cir. 1997)).  Plaintiff provides no additional arguments to form the basis for a constructive discharge claim, s*ee* Pl.'s Opp'n at 45-47, apart from those already thoroughly considered and rejected, *see supra* Parts III.A-C.  Thus, plaintiff's "constructive discharge claim fails as it must be predicated on a showing of either intentional discrimination or retaliation, and . . . summary judgment on each of her claims that could have formed the basis for this showing," *Carter*, 387 F.3d at 883 (internal citation omitted), has been granted.  Summary judgment, then, is granted to defendant as to the constructive discharge claim in Count 3.  *See Manuel v. Potter*, 685 F. Supp. 2d 46, 71 (D.D.C. 2010) ("Having determined that the defendant is entitled to summary judgment on the plaintiff's underlying discrimination and retaliation claims, his constructive discharge claim consequently also fails.").

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ELAINE ABBOTT, | |
| Plaintiff, | |
| v. | Civil Action No. 22-2717 (BAH) |
| | Judge Beryl A. Howell |
| JAMIESON GREER, *Acting Director, U.S. Office of Government Ethics*, | |
| Defendant. | |

**<u>ORDER</u>**

Upon consideration of defendant Jamieson Greer, Acting Director of the U.S. Office of Government Ethics's Motion for Summary Judgment, ECF No. 35; the memoranda, declarations, and exhibits submitted in support and opposition; and the entire record herein, for the reasons set forth in the accompanying Memorandum Opinion, it is hereby:

**ORDERED** that defendant's Motion for Summary Judgment, ECF No. 35, is **GRANTED**; it is further

**ORDERED** that judgment is entered in favor of defendant; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**

*This is a final and appealable order.*

Date:    July 21, 2025

_____
**BERYL A. HOWELL**
United States District Judge

1